510-09/WLJ/EJC
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
William L. Juska, Jr.
Edward J. Carlson

**09 CV 7467**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEKATRADE ASIA PTE. LTD.,
SINGAPORE

                              Plaintiff,

            -against-

BAUCHE S.A.,

                              Defendant.

09 Civ.    (   )

**VERIFIED COMPLAINT**

Plaintiff Mekatrade Asia Pte. Ltd., Singapore ("Mekatrade"), as and for its Verified

Complaint against Defendant Bauche S.A. ("Bauche"), alleges upon information and belief as

follows:

    1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract.

This case thus falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C.

§1333. The Court also has federal question jurisdiction pursuant to 28 U.S.C. §1331 in that the

action arises under the New York Convention on the Recognition and Enforcement of Foreign

Arbitral Awards, codified at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C.

§1 *et seq.*

2.    At all times relevant hereto, Plaintiff Mekatrade was and still is a business entity duly organized and existing under the laws of a foreign country with an address at Place du Molard, 7, 1204 Geneva, Switzerland.

3.    At all times relevant hereto, Defendant Bauche S.A. was and still is a foreign business entity organized and existing under the laws of a foreign country with an address at 4 rue Jean Nicot, F-75, 007 Paris, France.

## Terms of the Contracts

4.    The parties entered two separate contracts, dated February 26, 2009 and March 23, 2009 (hereinafter "the contracts"), pursuant to which Plaintiff Mekatrade sold Defendant Bauche two cargos of prilled urea. The terms of the contracts are nearly identical. (*See* Feb. 26, 2009 contract at Exhibit A. *See* March 23, 2009 contract at Exhibit B).

5.    The contracts contemplated that the cargos would be loaded onboard a vessel, travel by sea, and ultimately be delivered to one good safe berth, always accessible and always afloat, at one good safe port in either Dakar, Senegal or Abidjan, Ivory Coast.

6.    Under the terms of the February 26, 2009 contract, the cargo was to be loaded onto a vessel nominated and supplied by Mekatrade no later than April 10, 2009. Pursuant to the March 23, 2009 contract, the cargo was to be loaded onto a vessel nominated and supplied by Mekatrade no later than April 30, 2009.

7.    By a charter party dated March 25, 2009, Plaintiff Mekatrade chartered the M/V GALINA III to perform under the February 26, 2009 contract with Bauche. (*See* Exhibit C hereto). By a charter party dated April 17, 2009, Mekatrade chartered the M/V OCEAN LIGHT to perform under the March 23, 2009 contract with Bauche. (*See* Exhibit D hereto).

8. · Both contracts also set forth the rate at which the vessel was required to discharge the cargo, when discharge would be commenced, and how "demurrage" would be calculated for purposes of demurrage and dispatch.

9. "Demurrage" and "dispatch" are terms utilized in the maritime industry that relate to the loading and discharge of cargo. Demurrage represents liquidated damages due to a charterer or vessel owner for delays that occur when a vessel does not load or discharge cargo within the stipulated laytime, which is the time allotted under the contract for loading and discharging. Dispatch is the opposite of demurrage and represents compensation to be paid by a vessel owner or charterer when loading or discharge operations are completed within a shorter period than the laytime allowed.

10. Under the terms of the contracts, demurrage was at the same rate set by the charter parties under which Mekatrade chartered the vessels to carry the cargos. Dispatch was set at half the demurrage rate. The demurrage rate under the February 26, 2009 contract was $8,900 per day and under the March 23, 2009 contract $11,000 per day. (See demurrage provisions contained in charter parties at, respectively, Exhibits C and D.)

11. The sale of the cargoes was on a "CFR Dakar or Abidjan" basis, which means the goods were considered delivered when on board the vessel at the port of shipment and required Defendant Bauche to bear demurrage and any additional costs incurred after the delivery of the goods.

### Vessel Nomination, Shipment, and Performance under
### the February 26, 2009 Contract

12.    On or about March 24, 2009, in accordance with the terms of the February 26, 2009 contract, Mekatrade nominated the M/V GALINA III as the vessel for the carriage of the cargo.

13.    Mekatrade's nomination of the vessel set forth the vessel's dimensions and flag, the place of loading at Riga, Latvia, and discharge at one safe berth/one safe port in Dakar, Senegal or Abidjan, Ivory Coast.

14.    The cargo was loaded onboard the M/V GALINA III in Riga, Latvia on or about April 14, 2009, and ocean bills of lading were issued.

15.    The vessel proceeded from Lativa to Abidjan, Dakar and tendered her notice of readiness to discharge the cargo on May 4, 2009. (See Demurrage Invoice at Exhibit E.)

16.    Discharge of the cargo commenced shortly after the notice of readiness was tendered.

17.    Under the terms of the contract, laytime expired and demurrage commenced on May 19, 2009, and continued thereafter until discharge operations were completed on July 7, 2009.

18.    The vessel was on demurrage at Abidjan for 48 days, 13 hours and 33 minutes, for a total demurrage accrual of $432,224.79. (See Exhibit E.)

19.    Despite due demand, and in breach of the contract, Defendant Bauche S.A. has failed and/or refused to pay the demurrage, and the entire amount of $432,224.79 remains due and outstanding.

### Vessel Nomination, Shipment, and Performance under
### the March 23, 2009 Contract

20.    On or about April 16, 2009, in accordance with the terms of the contract dated March 23, 2009, Mekatrade nominated the M/V OCEAN LIGHT as the vessel for the carriage of the cargo.

21.    Mekatrade's nomination of the vessel set forth the vessel's dimensions and flag, the place of loading at Novorossiysk, Russia, and discharge at one safe berth in Dakar, Senegal or Abidjan, Ivory Coast.

22.    The cargo was loaded onboard the M/V OCEAN LIGHT in Novorossiysk, Russia on or about April 28, 2009 and ocean bills of lading were issued.

23.    The vessel proceeded from Russia to Abidjan, Dakar and tendered her notice of readiness to discharge the cargo on May 16, 2009. (See Demurrage Invoice at Exhibit F.)

24.    Discharge of the cargo commenced shortly after the notice of readiness was tendered.

25.    Under the terms of the contract, laytime expired and demurrage commenced on May 31, 2009, and continued thereafter until discharge operations were completed on July 12, 2009.

26.    At the discharge port of Abidjan, the vessel was on demurrage for 41 days, 10 hours and 22 minutes for a total demurrage accrual of $455,751.39. (See Exhibit F.)

27.    Despite due demand, and in breach of the contact, Defendant Bauche S.A. has failed and/or refused to pay the demurrage, and the entire amount of $455,751.39 remains due and outstanding.

### Maritime Jurisdiction over the Contracts and ICC Arbitration

28.   The contracts in question are commodity purchase and sale agreements that contain both maritime and non-maritime obligations.

29,   Where a purchase and sale agreement contains both maritime and non-maritime obligations, the Court severs the maritime obligations from the contract and exercises maritime jurisdiction over those severed obligations. *Euro Trust Trading S.A. v. Allgrains U.K. Co.*, No. 09 Civ. 4483, 2009 U.S. Dist. LEXIS 64663, at *11-12 (S.D.N.Y. July 24, 2009).

30.   Defendant Bauche's maritime obligations to pay Plaintiff demurrage are thus severable from the contracts at issue because they are "quintessentially maritime in nature and severable from any underlying purchase and sale agreement." *Id. Stemcor UK Ltd. v. Sesa International Ltd.*, No. 09 Civ. 1155, 2009 U.S. Dist. LEXIS 42855, at *7 (S.D.N.Y. May 18, 2009), ("[M]aritime jurisdiction is appropriate because Plaintiff seeks demurrage costs, which are traditional maritime claims.) *Noble Res. PTE, Ltd. v. Metinvest Holding Ltd.*, 622 F. Supp. 2d 77, (S.D.N.Y. 2009) "while it is well-settled that demurrage costs are 'maritime' in nature, . . . the courts have found that such clauses are severable from sale and purchase agreements." (citations omitted.)

31.   Because Defendant Bauche's failures to pay Plaintiff Mckatrade demurrage are severable from the underlying sale and purchase contracts, they constitute prima facie admiralty claims for Rule B purposes. *Euro Trust Trading S.A.*, 2009 U.S. Dist. LEXIS 64663, at *15 ("Accordingly, because plaintiff's claim is based on the breach of a maritime obligation severable from the remainder of the purchase and sale contract, it therefore constitutes a valid prima facie admiralty claim.")

32. The contracts also provide for the reference of disputes to arbitration in Paris, where they will be decided in accordance with the rules of the International Chamber of Commerce (ICC), and Plaintiff will soon commence arbitration in that forum. This action is therefore brought to obtain security in favor of Plaintiff Mekatrade in respect to its claims against Defendant and in aid of Paris arbitration.

33. Under French arbitration practice, costs, including arbitrators' fees, interest and legal fees, are recoverable as part of Plaintiff's claim against Defendant at the discretion of the arbitrators. Also, the arbitration provisions of the contracts provide in part: "Fees for the arbitration shall be borne by the losing party unless otherwise awarded." This action is further brought to obtain security for these additional sums that may also be recovered.

34. Plaintiff estimates, as nearly as can be computed, that the recoverable legal expenses and costs of prosecuting the claim in Paris arbitration will be $105,764.03, and interest on its damages is estimated to be $74,655.40 (calculated at the rate of 3.9% (the current rate of interest on French payments) from the date the amounts were due and outstanding and for an additional 2 years, the estimated time for completion of the proceedings in Paris).

### Request for Rule B Relief

35. Plaintiff Mekatrade has, in the recent past, made a dispatch payment to Defendant Bauche in U.S. Dollars to Defendant's account at Societe Generale in Paris, which payment was routed via JP Morgan Chase Bank in New York.

36. Defendant Bauche's bank, Societe Generale, maintains a branch office at 1221 Avenue of the Americas, New York, New York, 10020.

37. In addition, both contracts at issue in this dispute are U.S. Dollar-denominated transactions.

38.    On its website (http://www.bauche.com), Defendant Bauche publishes sales figures in U.S. Dollars for its international commodities business, as U.S. dollars are typically the currency used in international commodities transactions.

39.    In addition, this office has recently initiated two Rule actions against Defendant Bauche, *Indagro S.A. v. Bauche S.A.*, No. 08 Civ. 10174 (DAB) and *Indagro S.A. v. Bauche S.A.*, No. 08-10388 (PGG), pursuant to which we have placed $2,316,593.05 of Bauche's funds under attachment at garnishee banks located within this District, including four wire transfers that were restrained in 2009.

40.    Defendant Bauche regularly purchases large volumes of sugar from South America, which transactions are conducted in U.S. dollars.

41.    Upon information and belief, U.S. Dollar payments made in international commercial transactions of the type entered by Defendant Bauche are frequently made by electronic funds transfers. Approximately 95% of all electronic funds transfers in U.S. dollars between foreign entities are processed through the Clearing House Interbank Payments System ("CHIPS"). In order to convert a foreign currency into U.S. dollars, payments are routed through a participating CHIPS bank, usually located in New York City.

42.    Upon information and belief, because Defendant Bauche engages, and will continue to engage during the pendency of this litigation, in the business of purchasing and selling commodities on the international market, Defendant Bauche will make or receive payments in U.S dollars, some of which will exist in the form of electronic funds transfers through a CHIPS bank, usually located in New York City, and therefore within this District.

43.    Electronic funds transfers to or from a party in the hands of an intermediary bank have been held to constitute an attachable asset of that party and can be restrained pursuant to

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F3d 434, 436 (2d Cir, 2006).

44.     Accordingly, upon information and belief, Defendant Bauche has, or will have during the pendency of this litigation, assets in the District in the form of electronic funds transfers at banks located in New York City, including but not limited to "ASSETS" at, being transferred through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

45.     Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia,* cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in its name or for its benefit, at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

46.     The total amount to be attached pursuant to the calculations set forth above is **$1,068,395.61.**

WHEREFORE, Plaintiff Mekatrade prays:

a.   That process in due form of law according to the practice of this Court may issue against Defendant citing it to appear and answer the foregoing, failing which judgment by default be entered seeking recovery of the principal claim plus interest, disbursements, and reasonable attorneys fees;

b.   That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including **$1,068,395.61** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendant (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in its name or as may be held, received or transferred for its benefit, at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c.   That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to an order compelling Defendant to arbitrate and/or the recognition and enforcement of any award or judgment entered against the Defendant; and

d.   That this Court retain jurisdiction over the matter for any subsequent enforcement action as may be necessary; and

e.    For such other, further and different relief, as the Court may deem just and proper

in the premises and/or a default with respect to any property seized in the event a

timely response is not filed.

Dated: New York, New York
       August 26, 2009

                      FREEHILL HOGAN & MAHAR LLP
                      Attorneys for Plaintiff

By: _____
                      William L. Juska, Jr.
                      Edward J. Carlson
                      80 Pine Street
                      New York, NY 10005
                      (212) 425-1900

### ATTORNEY VERIFICATION

State of New York   )
                ) ss.:
County of New York )

    WILLIAM L. JUSKA, JR. being duly sworn, deposes and says as follows:

    1.    I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

    2.    The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

    3.    The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
William L. Juska, Jr.

Sworn to before me this
26th of August 2009

_____
Notary Public

CLARE HENRY
Notary Public, State of New York
No. 01HE4831498
Qualified in Kings County
Certificate in New York County
Commission Expires October 31, 2009



Exhibit A



### MEKATRADE Asia Pte Ltd, Singapore
#### Geneva branch

**PLACE DU MOLARD, 7**
**1204 GENEVA**
**SWITZERLAND**                                    **TELEFAX**
Tel    : +41 22 592 05 00
Fax    : +41 22 310 93 30                          **DATE : 26/02/2009**
Email  : mekatrade.geneva@mekatrade.com

| | |
|---|---|
| **To** | : BAUCHE S.A. / PARIS |
| **Attention** | : Mr. Maxime N'GUETTA |
| **CC** | : Mr. David TURNER / Switzerland |
| **From** | :N KIRKIS |
| **Subject** | : UREA CONTRACT V. 26.02.09.1 |

**Number of pages including this one : 5+**

Further to your/our phone agreement, we are pleased to recap the terms of
your purchase / our sale as following :

**SELLERS:**        **MEKATRADE ASIA Pte. Ltd., SINGAPORE**
                    **GENEVA BRANCH**
                    **place du Molard, 7**
                    **1204 Geneva**
                    **Switzerland**

**BUYERS:**         **BAUCHE S.A.**
                    **4 rue Jean Nicot**
                    **75007 Paris**
                    Tel     : +33 1 40 62 82 53
                    Fax     : +33 1 47 05 54 29
                    Mobile  : +336 23 07 01 59
                    Email   : engrais@bauche.com

**PRODUCT:**        **UREA PRILLED (UREA)**

**QUANTITY:**       *20/25.000 mt at sellers' option,*
                    *+/-10 pct each for shipping tolerance*

**SPECIFICATIONS:** Nitrogen                46.00 PCT min
                    Biuret                  1.00 PCT max

*IN CASE OF TRANSMISSION PROBLEM, PLEASE CONTACT US IMMEDIATELY*

MEKATRADE Asia - 360 Orchard Road #12-04A International Building - 238869 Singapore - Singapore

Place du Molard, 7                          Tel : +41 22 592 05 00
1204 Geneva                                 Fax : +41 22 310 93 30
Switzerland                                 Email : mekatrade.geneva@mekatrade.com



**MEKATRADE Asia Pte Ltd, Singapore**
Geneva branch

|  | Moisture | 1.00 PCT MAX |
|---|---|---|
|  | granulometry 1~5mm | 90.0 PCT MIN |

**PACKING:**      in bulk

**ORIGIN:**       any

**SHIPMENT:**     latest b/l date April 10th 2009 at sellers' option
in one or two lot(s) at sellers' option.
trans and partial shipment allowed.

**PRICE:**        Usd 298,00 pmt CFR fo Dakar (Senegal) or Abidjan (Ivory
coast)

**DESTINATION:**  1 gsb aaaa in 1gsp Dakar (Senegal) or Abidjan (Ivory
coast) to be declared by the buyers upon vessel's
nomination confirmation.

**PAYMENT:**      by irrevocable letter of credit confirmed by a 1st class
west European bank acceptable to sellers and payable at
sight against usual shipping documents mentioned
herewith . *Confirmation fee if any for account of*
*seller*
Letter of credit to be received in good working order
latest 10 working days from contract conclusion.

Failing to receive the letter of credit within above
deadline could result in unpredictable consequences
including but not limited to cancelling of the contract
and/or shipment(s) delays at buyers risks and expenses.

**DOCUMENTS:**    a) One original signed Commercial Invoice + 3 copies
b) 3/3 original Bills of Lading marked "clean on board"
and "freight prepaid" plus (3) non-negotiable copies

c) Packing list
d) One original Certificate of Origin + 3 copies issued by
chamber of commerce

*IN CASE OF TRANSMISSION PROBLEM, PLEASE CONTACT US IMMEDIATELY*

MEKATRADE Asia – 350 Orchard Road #12-04A International Building – 238899 Singapore – Singapore

Place du Molard, 7            Tel : +41 22 592 05 00
1204 Geneva                  Fax : +41 22 310 93 30
Switzerland                  Email : mekatrade.geneva@mekatrade.com



**MEKATRADE Asia Pte Ltd, Singapore**
Geneva branch

e) One original Certificate of Quality and Quantity + 3
copies issued by Inspectorate or similar international
independent surveyor
f) Bordereau de Suivi de Cargaison (BSC) may be
arranged by the Seller upon request of the Buyer outside
of the letter of credit. BSC costs to be for Buyer's
account.

**INSURANCE:** To be covered by buyers for all risks including loss of
weight if any. *Customer's overage premiums if any
for account of seller's*

**INSPECTION:** By an international independent surveyor at loading port
as to quantity and quality nominated and paid by seller's.
Results at loading port final and binding for both parties.

**DISCHARGING
RATE:** 1.500 Mtons per wwd of 24 consecutive hours,
sunday and holiday included.

N.O.R. tendered any time day and night SHINC is
accepted even by cable WIBON, WIPON, WIFPON,
WICCON.

Time start to count any time day and night SHINC.

**DEMURRAGE:** As per vessel nomination, despatch half demurrage.

**AGENTS:** Shipping agents to be nominated by Buyers. *04 for account
of seller's*

**NOMINATIONS
AND NOTICES:** Sellers shall nominate each carrying vessel for
buyer's acceptance and such acceptance cannot be
unreasonably withheld. If for any reason one nominated
vessel is unable to perform the voyage, seller shall have
the right to nominate a substitute vessel.
Seller shall give buyer or its agent reasonable notice of
the approximate date on which the carrying vessel will
arrive at the discharge port. Such dates shall be
approximate only, and seller shall not be liable for any
delay in arrival at discharge port: 5days/3days as well as
24 HRS.

*IN CASE OF TRANSMISSION PROBLEM, PLEASE CONTACT US IMMEDIATELY*

MEKATRADE Asia – 360 Orchard Road #12-04A International Building – 238869 Singapore - Singapore

Place du Molard, 7                                    Tel : +41 22 592 05 00
1204 Geneva                                           Fax : +41 22 310 93 30
Switzerland                                           Email : mekatrade.geneva@mekatrade.com



**MEKATRADE Asia Pte Ltd, Singapore**
Geneva branch

**STEVEDORE DAMAGES:** Damages caused by stevedores nominated and/or appointed by buyer to be settled directly between stevedores and ship owners. Buyer, however, to remain ultimately responsible for the settlement of such claims in case ship owner and stevedore fail to reach an agreement. Stevedores are considered as servants to buyer.

**TAX, DUTIES AND IMPORT PERMITS:** All taxes, dues, duties, royalties, permits, import custom clearance and any other charges of any nature on the cargo imposed or assessed by the country of destination for buyer's account

**ARBITRATION:** In the event of dispute under this contract that cannot be resolved amicably, the dispute shall be referred to arbitration in Paris in accordance with the rules of International Chamber of Commerce (ICC) and shall be conducted in the English language. Fees for the arbitration shall be borne by the losing party unless otherwise awarded

**CONFIDENTIAL:** For the purpose of securing the interest of all parties under this contract, it is hereby understood and agreed that both contract parties and their personnel shall treat the articles and provisions of this contract as confidential information and should not disclose or declare any information to any third party

**ISPS:** If requested by owners, the discharging port(s) has to comply with ISPS code requirements.

**FORCE MAJEURE:** Force Majeure Clause 2003 according to International Chamber of Commerce publication to apply to contract and shipment.

**INCOTERMS:** Stipulations of 2000 and further amendments to apply.

*IN CASE OF TRANSMISSION PROBLEM, PLEASE CONTACT US IMMEDIATELY*

MEKATRADE Asia – 360 Orchard Road #12-04A International Building - 238869 Singapore – Singapore

Place du Molard, 7          Tel : +41 22 592 05 00
1204 Geneva               Fax : +41 22 310 93 30
Switzerland               Email : mekatrade.geneva@mekatrade.com



**MEKATRADE Asia Pte Ltd, Singapore**
Geneva branch

**MISCELLANEOUS:**    This contract constitutes the entire agreement between the parties relating to the sale of the product in the quantities and during the period specified herein.
All prior and contemporaneous representations, understandings and agreements are superseded and merged herein.
No usage of trade or prior course of dealing or performance between the parties shall be deemed to modify the terms of this contract.
This contract cannot be assigned by the buyer without the express written consent of the seller.
This contract cannot be modified except in a writing signed by both parties.
No delay or failure to enforce any right or claim which a party may have hereunder shall constitute a waiver of such right or claim.
Buyers shall not set off any payment due under this contract against any claims under the present or any previous contracts.
No termination of this contract shall affect rights therefore accrued.
All notices required or permitted hereunder shall be made in writing and shall be deemed given when sent by telex or fax. Contract or subsequent communications by fax or email to have legal power.
Paragraph heading are for reference only and do not affect the meaning of any paragraph.
The buyers do not rely on any implied terms or warranties other than the contractual.

**BAUCHE S.A.**
The Buyers

**MEKATRADE BV GENEVA**
The sellers

*IN CASE OF TRANSMISSION PROBLEM, PLEASE CONTACT US IMMEDIATELY*

MEKATRADE Asia - 360 Orchard Road #12-04A International Building - 238869 Singapore - Singapore

Place du Molard, 7
1204 Geneva
Switzerland

Tel : +41 22 592 09 00
Fax : +41 22 310 93 30
Email : mekatrade.geneva@mekatrade.com



Exhibit B



MEKATRADE Asia Pte Ltd, Singapore
Geneva branch

**PLACE DU MOLARD, 7**
**1204 GENEVA**
**SWITZERLAND**                         **TELEFAX**
Tel    : +41 22 592 05 00
Fax    : +41 22 310 93 30          DATE : 23/03/2009
Email  : mekatrade.geneva@mekatrade.com

| | |
|---|---|
| **To** | : BAUCHE S.A. / PARIS |
| **Attention** | : Mr. Maxime N'GUETTA |
| **CC** | : Mr. David TURNER / Switzerland |
| **From** | :N KIRKIS |
| **Subject** | : UREA CONTRACT |

Number of pages including this one : 5+

Further to your/our phone agreement, we are pleased to recap the terms of
your purchase / our sale as following :

**SELLERS:**        **MEKATRADE ASIA Pte. Ltd., SINGAPORE**
               **GENEVA BRANCH**
               **place du Molard, 7**
               **1204 Geneva**
               **Switzerland**

**BUYERS:**         **BAUCHE S.A.**
               **4 rue Jean Nicot**
               **75007 Paris**
               **Tel    : +33 1 40 62 82 53**
               **Fax    : +33 1 47 05 54 29**
               **Mobile : +336 23 07 01 59**
               **Email  : engrais@bauche.com**

**PRODUCT:**        **UREA PRILLED (UREA)**

**QUANTITY:**       **20/25,000 mt at sellers' option,**
               **+/-10 pct each for shipping tolerance**

**SPECIFICATIONS:**  **Nitrogen**          **46.00 PCT min**
                **Biuret**            **1.00 PCT max**

*IN CASE OF TRANSMISSION PROBLEM, PLEASE CONTACT US IMMEDIATELY*

MEKATRADE Asia – 360 Orchard Road # 12-04A International Building – 238869 Singapore - Singapore

Place du Molard, 7                           Tel : +41 22 592 05 00
1204 Geneva                                  Fax : +41 22 310 93 30
Switzerland                        Email : mekatrade.geneva@mekatrade.com



MEKATRADE Asia Pte Ltd, Singapore
Geneva branch

| | | |
|---|---|---|
| Moisture | 1.00 PCT MAX | |
| granulometry 1-5mm | 90.0 PCT MIN | |

**PACKING:** in bulk

**ORIGIN:** any

**SHIPMENT:** latest b/l date April 30th 2009 at sellers' option
in one or two lot(s) at sellers' option.
trans and partial shipment allowed.
shipment intended for second half April 2009

**PRICE:** Usd 275,00 pmt CFR fo Dakar (Senegal) or Abidjan (Ivory coast)

**DESTINATION:** 1 gsb aaaa in 1gsp Dakar (Senegal) or Abidjan (Ivory coast) to be declared by the buyers upon vessel's nomination confirmation.

**PAYMENT:** by irrevocable letter of credit issued and confirmed by BNP PARIBAS and payable at sight against usual shipping documents mentioned herewith

Confirmation costs if any to be for sellers' account.

Letter of credit to be received in good working order latest by 10th of April 2009.

Failing to receive the letter of credit within above deadline could result in unpredictable consequences including but not limited to cancelling of the contract and/or shipment(s) delays at buyers risks and expenses.

**DOCUMENTS:** a) One original signed Commercial Invoice + 3 copies
b) 3/3 original Bills of Lading marked "clean on board" and "freight prepaid" plus (3) non-negotiable copies

c) Packing list

*IN CASE OF TRANSMISSION PROBLEM, PLEASE CONTACT US IMMEDIATELY*

MEKATRADE Asia - 360 Orchard Road #12-01A International Building - 238869 Singapore - Singapore

Place du Molard, 7
1204 Geneva
Switzerland

Tel : +41 22 592 05 00
Fax : +41 22 310 93 30
Email : mekatrade.geneva@mekatrade.com



**MEKATRADE Asia Pte Ltd, Singapore**
Geneva branch

d) One original Certificate of Origin + 3 copies issued by chamber of commerce
e) One original Certificate of Quality + 3 copies issued by seller.
f) Bordereau de Suivi de Cargaison (BSC) may be arranged by the Seller upon request of the Buyer outside of the letter of credit. BSC costs to be for Buyer's account.

**INSURANCE:** To be covered by buyers for all risks including loss of weight if any.

**INSPECTION:** By an international independent surveyor at loading port as to quantity and quality nominated and paid by seller's. Results at loading port final and binding for both parties.

**DISCHARGING RATE:** 1.500 Mtons per wwd of 24 consecutive hours, sunday and holiday included.

N.O.R. tendered any time day and night SHINC is accepted even by cable WIBON, WIPON, WIFPON, WICCON.

Time start to count any time day and night SHINC.

**DEMURRAGE:** As per vessel nomination, despatch half demurrage, despatch half demurrage.

**AGENTS:** Shipping agents to be nominated by Buyers.

**NOMINATIONS AND NOTICES:** Sellers shall nominate each carrying vessel for buyer's acceptance and such acceptance cannot be unreasonably withheld. If for any reason one nominated vessel is unable to perform the voyage, seller shall have the right to nominate a substitute vessel.
Seller shall give buyer or its agent reasonable notice of the approximate date on which the carrying vessel will arrive at the discharge port. Such dates shall be approximate only, and seller shall not be liable for any

*IN CASE OF TRANSMISSION PROBLEM, PLEASE CONTACT US IMMEDIATELY*

MEKATRADE Asia - 360 Orchard Road #12-04A International Building · 238869 Singapore - Singapore

Place du Molard, 7
1204 Geneva
Switzerland

Tel : +41 22 592 05 00
Fax : +41 22 310 93 30
Email : mekatrade.geneva@mekatrade.com



**MEKATRADE Asia Pte Ltd, Singapore**
Geneva branch

delay in arrival at discharge port: 5days/3days as well as 24 HRS.

**STEVEDORE DAMAGES:** Damages caused by stevedores nominated and/or appointed by buyer to be settled directly between stevedores and ship owners. Buyer, however, to remain ultimately responsible for the settlement of such claims in case ship owner and stevedore fail to reach an agreement. Stevedores are considered as servants to buyer.

**TAX, DUTIES AND IMPORT PERMITS:** All taxes, dues, duties, royalties, permits, import custom clearance and any other charges of any nature on the cargo imposed or assessed by the country of destination for buyer's account

**ARBITRATION:** In the event of dispute under this contract that cannot be resolved amicably, the dispute shall be referred to arbitration in Paris in accordance with the rules of International Chamber of Commerce (ICC) and shall be conducted in the English language. Fees for the arbitration shall be borne by the losing party unless otherwise awarded

**CONFIDENTIAL:** For the purpose of securing the interest of all parties under this contract, it is hereby understood and agreed that both contract parties and their personnel shall treat the articles and provisions of this contract as confidential information and should not disclose or declare any information to any third party

**ISPS:** If requested by owners, the discharging port(s) has to comply with ISPS code requirements.

**FORCE MAJEURE:** Force Majeure Clause 2003 according to International Chamber of Commerce publication to apply to contract and shipment.

*IN CASE OF TRANSMISSION PROBLEM, PLEASE CONTACT US IMMEDIATELY*

MEKATRADE Asia - 360 Orchard Road #12-04A International Building - 238869 Singapore - Singapore

Place du Molard, 7
1204 Geneva
Switzerland

Tel : +41 22 592 05 00
Fax : +41 22 310 93 30
Email : mekatrade.geneva@mekatrade.com



**MEKATRADE Asia Pte Ltd, Singapore**
Geneva branch

| | |
|---|---|
| **INCOTERMS:** | Stipulations of 2000 and further amendments to apply. |
| **MISCELLANEOUS:** | This contract constitutes the entire agreement between the parties relating to the sale of the product in the quantities and during the period specified herein. |
| | All prior and contemporaneous representations, understandings and agreements are superseded and merged herein. |
| | No usage of trade or prior course of dealing or performance between the parties shall be deemed to modify the terms of this contract. |
| | This contract cannot be assigned by the buyer without the express written consent of the seller. |
| | This contract cannot be modified except in a writing signed by both parties. |
| | No delay or failure to enforce any right or claim which a party may have hereunder shall constitute a waiver of such right or claim. |
| | Buyers shall not set off any payment due under this contract against any claims under the present or any previous contracts. |
| | No termination of this contract shall affect rights therefore accrued. |
| | All notices required or permitted hereunder shall be made in writing and shall be deemed given when sent by telex or fax. Contract or subsequent communications by fax or email to have legal power. |
| | Paragraph heading are for reference only and do not affect the meaning of any paragraph. |
| | The buyers do not rely on any implied terms or warranties other than the contractual. |

**BAUCHE S.A.**
The Buyers

**MEKATRADE BV GENEVA**
The sellers

*IN CASE OF TRANSMISSION PROBLEM, PLEASE CONTACT US IMMEDIATELY*

MEKATRADE Asia - 360 Orchard Road #12-04A International Building - 238869 Singapore - Singapore

Place du Molard, 7
1204 Geneva
Switzerland

Tel : +41 22 592 05 00
Fax : +41 22 310 93 30
Email : mekatrade.geneva@mekatrade.com



Exhibit C

OWNERS

Adopted by the Documentary Committee of the General Council of British Shipping, London, the Documentary Committee of The Japan Shipping Exchange, Inc., Tokyo

| | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE<br>UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)<br>INCLUDING "F.I.O." ALTERNATIVE, ETC.<br>(To be used for trades for which no approved form is in force)<br>CODE NAME: "GENCON" |
|---|---|
| **1. Shipbroker** | Part I |
| | **2. Place and date** *Paris, the 25th March 2009* |
| **3. Owners/Place of business (Cl. 1)**<br><br>*HRISA LINES S.A.,*<br>*Paseo Habana, 72 - L3,*<br>*28036 MADRID*<br>*SPAIN* | **4. Charterers/Place of business (Cl. 1)**<br><br>*MERATRADE ASIA PTE LTD, SINGAPORE*<br>*GENEVA BRANCH*<br>*7, Place du Molard*<br>*1204 GENEVA*<br>*SWITZERLAND* |
| **5. Vessel's name (Cl. 1)**<br>*M/V 'GALINA III'* | **6. GRT/NRT (Cl. 1)**<br>*16.699/8.919* |
| **7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)**<br><br>*See description clause 38* | **8. Present position (Cl. 1)**<br><br>*Vessel presently in CAEN. Agents in CAEN: SOGEMAR.*<br>*ETA FLUSHING 29th March 2009 pm* |
| **9. Expected ready to load (abt.) Laydays (Cl. 1)**<br>*2nd April 2009* | |
| **10. Loading port or place (Cl. 1)**<br><br>*one berth at ALPHA OSTA Terminal, RIGA, LATVIA* | **11. Discharging port or place (Cl. 1)**<br>*at Charterers' option one berth DAKAR, SENEGAL,*<br>*OR one berth ABIDJAN, IVORY COAST, declarable on completion of loading* |
| **12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)**<br><br>*20,000 metric tons 10 percent more or less in Owners' option of BULK UREA, with stowage factor about 51/52 cft/MT.*<br>*Estimated intake; about 20,700 metric tons.* | |
| **13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)**<br>*per metric ton always F.I.O. spout/grab trimmed*<br><br>*- USS 28,00 (twenty eight US Dollars) basis DAKAR*<br>*- USS 30,00 (thirty US Dollars) basis ABIDJAN* | **14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)**<br><br>*see clause 18* |
| **15. Loading and discharging costs (state alternative (a) or (c) of Cl. 5; also indicate if the vessel is gearless)**<br><br>*(b)* | **16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6)**<br>*a) Laytime for loading: 6.000 mt per wwd of 24 consecutive hours or prorata SHINC - see also clause 19A)* |
| **17. Shippers (state name and address) (Cl. 6)** | *b) Laytime for discharging: 1.500 mt per wwd of 24 consecutive hours or prorata SHINC - see also clause 19B)* |
| | *c) Total laytime for loading and discharging* |
| **18. Demurrage rate (loading and discharging) (Cl. 7)** *USD 8,000 per day or prorata. See also clause 28.* | **19. Cancelling date (Cl. 10)**<br>*7th April 2009* |
| **20. Brokerage commission and to whom payable (Cl. 14)** *3,75% total commission to SEA SATIN SHIPPING S.A., Piraeus, for division with LERBRET ET CIE S.A.S., Paris, on freight/deadfreight/demurrage, if any.* | |
| **21. Additional clauses covering special provisions, if agreed.** | |
| *Additional clauses n° 18 to 46, both inclusive, as attached hereto, are deemed to be incorporated in this charter party and to apply.* | |

Copyright, published by The Baltic and International Maritime Council (BIMCO), Copenhagen

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

Computer generated form printed by authority of The Baltic and International Maritime Council (BIMCO), Copenhagen, using software which is the copyright of Strategic Software Ltd.

PART II
"Gencon" Charter (As Revised 1922 and 1976)
Including "F.I.O" Alternative, etc.

| | | |
|---|---|---|
| 1. | It is agreed between the party mentioned in Box 3 as Owners of the steamer or motor-vessel named in Box 5, of the classed indicated in the Register and carrying about the number of tons of deadweight cargo stated in Box 7, now in position as stated in Box 6 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that: | 1-2-3-4-5-6-7 |
| | The said vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at Charterers' risk) as stated in Box 12 (Charterers to provide all mats and/or wood for dunnage and any separations required, the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship and being so loaded the vessel shall proceed to the discharging port or place stated in Box 11 as ordered on signing Bills of Lading or so near thereto as she may safely get and be always afloat and there deliver the cargo on being paid freight on delivered or intaken quantity as indicated in Box 13 at the rate stated in Box 13. Owners to satisfy themselves with ports/berths restrictions at loading and discharging port. | 8-9-10-11-12-13-14-15-16-17-18-19-20 |
| 2. | **Owners' Responsibility Clause**<br>Owners are to be responsible for loss or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (unless stowage performed by shippers/Charterers or their stevedores or servants) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.<br>And the Owners are responsible for no loss or damage or delay arising from, any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or ashore for whose sole they would, but for this clause, be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever.<br>Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods are to be considered as caused by improper or negligent stowage, even if in fact so caused.<br>Master to provide stowage plan prior to arrival of vessel at loading port. | 21-22-23-24-25-26-27-28-29-30-31-32-33-34-35-36-37-38-39-40 |
| 3. | **Deviation Clause**<br>The vessel has liberty to call at any port or ports en route in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property. | 41-42-43-44-45 |
| 4. | **Payment of Freight - see clause 18 -**<br>The freight to be paid in the manner prescribed in Box 14 in cash without discount on delivery of the cargo at mean rate of exchange ruling on day or days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.<br>Cash for vessel's ordinary disbursements at port of loading to be advanced if required by Charterers at highest current rate of exchange, subject to two per cent. to cover insurance and other expenses. | 46-47-48-49-50-51-52-53-54-55 |
| 5. | **Loading/Discharging Costs**<br>(a) Gross Terms<br>The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and pay the necessary men on shore or on board the lighters to do the work there, vessel only heaving the cargo on board.<br>If the loading takes place by elevator, cargo to be put free in vessel's holds, Owners only paying trimming expenses.<br>Any pieces and/or packages of cargo over two tons weight, shall be loaded, stowed and discharged by Charterers at their risk and expense.<br>The cargo to be received by Merchants at their risk and expense alongside the vessel not beyond the reach of her tackle.<br>(b) F.I.O. and free stowed spout/trimmed/grab trimmed<br>The cargo shall be brought into the holds, loaded, stowed spout and/or grab trimmed and taken from the holds and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners.<br>The Owners shall provide winches, motive power and winchmen from the Crew if requested and permitted; if not, the Charterers shall provide and pay for winchmen from shore and/or cranes, if any. (This provision shall not apply if vessel is gearless and stated as such in Box 16).<br>Indicate alternative (a) or (b), as agreed, in Box 15. | 56-57-58-59-60-61-62-63-64-65-66-67-68-69-70-71-72-73-74-75-76-77 |
| 6. | **Laytime - see clause 19A) and 19B)**<br>(a) Separate laytime for loading and discharging | 78-79 |

| | | |
|---|---|---|
| | The cargo shall be loaded within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.<br>The cargo shall be discharged within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.<br>(b) Total laytime for loading and discharging<br>The cargo shall be loaded and discharged within the number of total running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.<br>(c) Commencement of laytime (loading and discharging)<br>Laytime for loading and discharging shall commence at 1 p.m. if notice of readiness is given before noon, and at 6 a.m. next working day if notice given during office hours after noon. Notice at loading port to be given to the Shippers named in Box 17.<br>Time actually used before commencement of laytime shall count.<br>Time lost in waiting for berth to count as loading or discharging time, as the case may be.<br>Indicate alternative (a) or (b) as agreed, in Box 16. | 81-82-83-84-85-86-87-88-89-90-91-92-93-94-95-96-97-98-99-100 |
| 7. | **Demurrage**<br>Ten running days on demurrage at the rate stated in Box 18 per day or pro rata for any part of a day, payable day by day, to be allowed Merchants altogether at ports of loading and discharging to be paid as per clause 18. | 101-102-103-104 |
| 8. | **Lien Clause**<br>Owners shall have a lien on the cargo for freight, dead-freight, demurrage and damages for detention. Charterers shall remain responsible for dead-freight and demurrage (including damages for detention), incurred at port of loading. Charterers shall also remain responsible for freight and demurrage (including damages for detention) incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo. | 105-106-107-108-109-110-111-112-113 |
| 10. | **Bills of Lading**<br>The Captain to sign Bills of Lading at such rate of freight as presented without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading. | 114-115-116-117-118-119 |
| 10. | **Cancelling Clause**<br>Should the vessel not be ready to load (whether in berth or not) on or before the date indicated in Box 19, Charterers have the option of cancelling this contract, such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise, Charterers to be informed as soon as possible, and, if the vessel is delayed for more than 10 days after the day she is stated to be expected ready to load, Charterers have the option of cancelling this contract, unless a cancelling date has been agreed upon. | 120-121-122-123-124-125-126-127-128-129 |
| 11. | **General Average**<br>General average to be settled in London according to York-Antwerp Rules, 1974. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see clause 2). | 130-131-132-133-134 |
| 12. | **Indemnity**<br>Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight. | 135-136-137 |
| 13. | **Agency**<br>In every case the At both ends.<br>Agents to be selected by Charterers and appointed by Owners who are paying usual fee/tariff Clause shall appoint the own Broker or Agent both at the port of loading and the port of discharge. | 138-139-140 |
| 14. | **Brokerage**<br>A brokerage commission at the rate stated in Box 20 on the freight, deadfreight and demurrage earned is due to the party mentioned in Box 20.<br>In case of non-execution at least 1/3 of the brokerage on the estimated amount of freight and dead freight to be paid by the Owners to the Brokers as indemnity for the latters expenses and work. In case of more voyages the amount of indemnity to be mutually agreed. | 141-142-143-144-145-146-147 |
| 15. | **GENERAL STRIKE CLAUSE**<br>Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligations under this contract.<br>If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in | 148-149-150-151-152-153-154-155-156-157 |

This document is a computer generated GENCON form printed by authority of The Baltic and International Maritime Council (BIMCO), using software which is the copyright of Strategic Software Ltd (SSL). Any insertion or deletion to the form must be clearly visible. In the event of any modifications made to the pre-printed text of this document, and which is not clearly visible, then the original BIMCO approved document shall apply. BIMCO and SSL assume no responsibility for any loss or damage caused as a result of discrepancies between the original BIMCO approved document and this document.

PART II
"Gencon" Charter (As Revised 1922 and 1976)
Including "F.I.O" Alternative, etc.

waiting (by telegram, if necessary) within 24 hours, Owners shall 158
have the option of cancelling this contract. If part cargo has already 159
been loaded, Owners must proceed with same, (freight payable on 160
loaded quantity only) having liberty to complete with other cargo 161
on the way for their own account. 162

If there is a strike or lock-out affecting the discharge of the cargo 163
on or after vessel's arrival at or off port of discharge and same has 164
not been settled within 48 hours, Receivers shall have the option of 165
keeping vessel waiting until such strike or lock-out is at an end 166
against paying half demurrage after expiration of the time provided 167
for discharging, or of ordering the vessel to a safe port where she 168
can safely discharge without risk of being detained by strike or lock- 169
out. Such orders to be given within 48 hours after Captain or Owners 170
have given notice to Charterers of the strike or lock-out affecting 171
the discharge. On delivery of the cargo at such port, all conditions 172
of this Charterparty and of the Bill of Lading shall apply and vessel 173
shall receive the same freight as if she had discharged at the 174
original port of destination, except that if the distance of the sub- 175
stituted port exceeds 100 nautical miles, the freight on the cargo 176
delivered at the substituted port to be increased in proportion. 177

18. **War Risks ("Voywar 1950")** 178

(1) In these clauses "War Risks" shall include any blockade or any 179
action which is announced as a blockade by any Government or by any 180
belligerent or by any organized body, sabotage, piracy, and any actual 181
or threatened war, hostilities, warlike operations, civil war, civil com- 182
motion, or revolution. 183

(2) If at any time before the Vessel commences loading, it appears that 184
performance of the contract will subject the Vessel or her Master and 185
crew or her cargo to war risks at any stage of the adventure, the Owners 186
shall be entitled by letter or telegram despatched to the Charterers, to 187
cancel this Charter. 188

(3) The Master shall not be required to load cargo or to continue 189
loading or to proceed on or to sign Bill(s) of Lading for any adventure 190
on which or any port at which it appears that the Vessel, her Master 191
and crew or her cargo will be subjected to war risks. In the event of 192
the exercise by the Master of this right under this Clause after part or 193
full cargo has been loaded, the Master shall be at liberty either to 194
discharge such cargo at the loading port or to proceed therewith. 195
In the latter case the Vessel shall have liberty to carry other cargo 196
for Owners' benefit and accordingly to proceed to and load or 197
discharge such other cargo at any other port or ports whatsoever, 198
backwards or forwards, although in a contrary direction to or out of or 199
beyond the ordinary route. In the event of the Master electing to 200
proceed with part cargo under this Clause freight shall in any case 201
be payable on the quantity delivered. 202

(4) If at the time the Master elects to proceed with part or full cargo 203
under Clause 3, or after the Vessel has left the loading port, or the 204
last of the loading ports, if more than one, it appears that further 205
performance of the contract will subject the Vessel, her Master and 206
crew or her cargo, to war risks, the cargo shall be discharged, or if 207
the discharge has been commenced shall be completed, at any safe 208
port in vicinity of the port of discharge as may be ordered by the 209
Charterers. If no such orders shall be received from the Charterers 210
within 48 hours after the Owners have despatched a request by 211
telegram to the Charterers for the nomination of a substitute discharg- 212
ing port, the Owners shall be at liberty to discharge the cargo at 213
any safe port which they may, in their discretion, decide on and such 214
discharge shall be deemed to be due fulfilment of the contract of 215
affreightment. In the event of cargo being discharged at any such 216
other port, the Owners shall be entitled to freight as if the discharge 217
had been effected at the port or ports named in the Bill(s) of Lading 218
or to which the Vessel may have been ordered pursuant thereto. 219

(5) (a) The Vessel shall have liberty to comply with any directions 220
or recommendations as to loading, departure, arrival, routes, ports 221
of call, stoppages, destination, zones, waters, discharge, delivery or 222
in any other wise whatsoever (including any direction or recom- 223
mendation not to go to the port of destination or to delay proceeding 224
thereto or to proceed to some other port given by any Government or 225
by any belligerent or by any organized body engaged in civil war, 226
hostilities or warlike operations or by any person or body acting or 227
purporting to act as or with the authority of any Government or 228
belligerent or of any such organized body or by any committee or 229
person having under the terms of the war risks insurance on the 230
Vessel, the right to give any such directions or recommendations. If 231
by reason of or in compliance with any such direction or recom- 232
mendation, anything is done or is not done, such shall not be deemed 233
a deviation. 234

(b) If, by reason of or in compliance with any such directions or re- 235
commendations, the Vessel does not proceed to the port or ports 236
named in the Bill(s) of Lading or to which she may have been 237
ordered pursuant thereto, the Vessel may proceed to any port as 238
directed or recommended or to any safe port which the Owners in 239
their discretion may decide on and there discharge the cargo. Such 240
discharge shall be deemed to be due fulfilment of the contract of 241
affreightment and the Owners shall be entitled to freight as if 242

discharge had been effected at the port or ports named in the Bill(s) 243
of Lading or to which the Vessel may have been ordered pursuant 244
thereto. 245

(6) All extra expenses (including insurance costs) involved in discharg- 246
ing cargo at the loading port or in reaching or discharging the cargo 247
at any port as provided in Clauses 4 and 5 (b) hereof shall be paid 248
by the Charterers and/or cargo owners, and the Owners shall have 249
a lien on the cargo for all moneys due under these Clauses. 250

~~17.~~ **GENERAL ICE CLAUSE** 251
~~Part of loading~~ 252

~~(a) In the event of the loading port being inaccessible by reason of~~ 253
~~ice when vessel is ready to-proceed from her loading port or at any~~ 254
~~time during the voyage or on vessel's arrival or in case last one in~~ 255
~~other vessels arrival, the Captain for fear of being frozen in is at~~ 256
~~liberty to leave without cargo, and this Charter shall be null and~~ 257
~~void.~~ 258
~~(b) If during loading the Captain, for fear of vessel being frozen in,~~ 259
~~deems it advisable to leave, he has liberty to do so with what cargo~~ 260
~~he has on board and to proceed to any other port or ports with~~ 261
~~option of completing cargo for Owners' benefit for any port or ports~~ 262
~~including-port of discharge. Any part cargo thus loaded under this~~ 263
~~Charter to be forwarded to destination at vessel's expense but~~ 264
~~against payment of freight, provided that no extra expenses be~~ 265
~~thereby caused to the Receivers, freight being paid on quantity~~ 266
~~delivered (in proportion if lumpsum) all other conditions as per~~ 267
~~Charter.~~ 268
~~(c) In case of more than one loading port, and if one or more of~~ 269
~~the ports are closed by ice, the Captain or Owners to be at liberty~~ 270
~~either to load the part cargo at the open port and fill up elsewhere~~ 271
~~for their own account as under section (b) or to declare the Charter~~ 272
~~null and void unless Charterers agree to load full cargo at the open~~ 273
~~port.~~ 274
~~(d) This Ice Clause not to apply in the Spring.~~ 275

~~Port of discharge~~ 276

~~(a) Should ice (except in the Spring) prevent vessel from reaching~~ 277
~~port of discharge Receivers shall have the option of keeping vessel~~ 278
~~waiting until the re-opening of navigation and paying demurrage, or~~ 279
~~of ordering the vessel to a safe and immediately accessible port~~ 280
~~where she can safely discharge without risk of detention by ice.~~ 281
~~Such orders to be given within 48 hours after Captain or Owners~~ 282
~~have given notice to Charterers of the impossibility of reaching port~~ 283
~~of destination.~~ 284

~~(b) If during discharging the Captain for fear of vessel being frozen~~ 285
~~in deems it advisable to leave, he has liberty to do so with what~~ 286
~~cargo he has on board and to proceed to the nearest accessible~~ 287
~~port where she can safely discharge.~~ 288

~~(c) On delivery of the cargo at such port, all conditions of the Bill~~ 289
~~of Lading shall apply and vessel shall receive the same freight as~~ 290
~~if she had discharged at the original port of destination, except that if~~ 291
~~the distance of the substituted port exceeds 100 nautical miles, the~~ 292
~~freight on the cargo delivered at the substituted port to be increased~~ 293
~~in proportion.~~ 294

~~Charterers guarantee loading port is free of ice.~~

This document is a computer generated GENCON form printed by authority of The Baltic and International Maritime Council (BIMCO) using software which is the copyright of Strategic Software Ltd (SSL). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document, and which is not clearly visible, then the original BIMCO approved document shall apply. BIMCO and SSL assume no responsibility for any loss or damage caused as a result of discrepancies between the original BIMCO approved document and this document.

## ADDITIONAL CLAUSES TO THE C/P OF M/V "GALINA III" DATED PARIS, 25th MARCH 2009

18. Payment of freight :

Freight is payable on Bill(s) of Lading intaken weight but always limited to the maximum quantity stated in box n° 12.

Freight is payable 95% less commissions and estimated despatch, on Bill(s) of Lading intaken weight within 4 (four) banking days after signing/releasing Bill(s) of Lading marked "Clean on Board" and "Freight payable as per Charter Party" or in Charterers' option "Freight Prepaid".

In the later case, Agents at loading port to be in custody of Bills of Lading. When Charterers' bank has given advice to Owners' managing office of irrevocable freight remittance as per Charter Party, Owners' bank to confirm Charterers' freight reception, Owners to immediately instruct Agents at loading port to release Bill(s) of Lading.

"Clean on board" Bill(s) of Lading only if Master agrees and "Freight Prepaid" could only be acceptable if 100% of freight is paid before delivering Bill(s) of Lading.

Balance of freight, less despatch, plus demurrage, if any, to be settled after right and true delivery of the cargo and agreement of Owners' final freight account supported by all relevant original documents duly stamped and signed by Master, Shippers, Receivers and Agents.

Freight is deemed earned as cargo being loaded, discountless, ship and/or cargo lost or not lost.

Owners to instruct Master that "Clean on board' Bills of Lading to be issued, but Owners have the option to reject the loading of damaged cargo, which to be replaced with sound commodity.

In respect of issuing "Clean on Board" Bills of Lading, Master has the right to reject damaged cargo as far as same will be considered not proper for commercial purposes by the Charterers.

Should the Master have any doubt as to the quality of the goods presented for loading, his obligation is to immediately stop the loading and to advice Charterers in writing through Owners' brokers. An independent Surveyor specialised in fertilisers shall then be appointed by Charterers at their costs to determine whether cargo may ·be considered "Clean" or not. The time so lost will be for Charterers and the decision so taken will be final.

Freight to be paid to :

TIMBER NAVIGATION TRANSPORT INC.
C/O BRISA LINES
BARCLAYS BANK PLC
31, AVENUE DE LA COSTA
MC98000 MONTECARLO
MONACO
SWIFT CODE : BARCMCMX
IBAN ACCOUNT : MC58 1244 8610 1721 0612 5000 101

19.
A)
Laytime at loading port shall commence at 2 p.m. if Notice of Readiness is given before noon, noon excluded, and 8 a.m. on next working day if Notice of Readiness is given after noon, noon included, before 19.00 hours loading port time, whether in berth or not, whether in port or not, whether in customs clearance or not, whether in free pratique or not, unless due to sanitary reasons, provided berth congested, Fridays, Saturdays, Sundays and holidays included.

1

## ADDITIONAL CLAUSES TO THE C/P OF  M/V "GALINA III"
## DATED PARIS, 25th MARCH 2009

### 19. Continued......

B) Laytime at discharging port shall commence at 2 p.m. if Notice of Readiness is given before noon, noon excluded, and 8 a.m. on next working day if Notice is given after noon, noon included, before 19.00 hours discharging port time, whether in berth or not, whether in port or not, whether in customs clearance or not, whether in free pratique or not, unless due to sanitary reasons, provided berth congested, Fridays, Saturdays, Sundays and holidays included.

C)
Time for proceeding from anchorage to loading or discharging berth not to count as laytime, even if vessel already on demurrage.

Laytime not to be reversible between loading and discharging ports.

Any time used prior commencement of laycan/laytime shall count as 50% laytime at loading and discharging ports.

20. Vessel's holds to be odourless, properly swept, cleaned and dried to Shippers' or Charterers' representative satisfaction before tendering notice of readiness.

Vessel to be clean and ready in every respect to load on arrival to surveyor's satisfaction who to conduct condition/holds/hatches survey, as well as hose test. If the vessel fails inspection Owners are to expedite cleaning at their time and expenses. Owners have an obligation to use all possible means to clean the vessel and make her loadready, including the hiring of shore labour and equipment at their time and expense.

21. Owners warrant that the vessel is fully and in every way suitable for the carriage of the contracted cargo.

The vessel will be spout/grab trimmed at loading. In the event Master requires additional trimming over and above the normal spout/grab trimming, time and expense to be for Owners' account.

Cargo to be loaded in unobstructed main holds and open tweendeck spaces only, i.e. with tween deck hatcovers open in holds 2 and 4, excluding any other place. All space is guaranteed suitable for grab discharge, fully suitable for bulldozer discharge in case of bulk cargo. No cargo to be loaded in deeptanks or any other awkward places.

Any cost resulting from merchandise not being accessible to Receivers' grabs to be for Owners' account and time so lost not to count.

Any delays evidently due to vessel's configuration in flush tween holds 2 and 4 being unsuitable for grab discharge, will be deducted from time counting.

22. All opening and closing of hatches at loading and discharging port is to be done or paid for by the vessel and time so used  to count as laytime.

23. Whenever required, vessel shall supply free use of light as on board, but sufficient to carry on night work.

24. Provided described as geared, vessel to be in possession of a valid certificate of efficiency for winches and derricks for the duration of this charter party and to supply, whenever required, at each port, at all times, free of charge to Charterers, winches and

2

ADDITIONAL CLAUSES TO THE C/P OF  M/V "GALINA III"
DATED PARIS, 25th MARCH 2009

**24. Continued...**

gear and the necessary power, in good working order, including ropes and slings as required for loading and discharging the cargo.
Any time lost on account of failure in the facilities and/or insufficient power and/or of a breakdown of winches/gears, shall not count as laytime or time on demurrage. The laytime to be extended prorata for the period of such inefficiency in relation to the number of working gangs available.

25. At both ends taxes/dues on cargo/freight to be for Charterers' account.
At both ends taxes/dues on vessel to be for Owners' account.

Security tugs and fire guards, if any, at loading and discharging ports, to be for Owners' account.

Vessel's disbursements accounts, both at loading and discharging ports, to be paid directly by the Owners to the agents and to be properly provisioned prior vessel's arrival, failing which Owners to be responsible for any delay and/or expenses arising therefrom.

26. Overtime to be for account of the party ordering same, but Officers and crew's overtime to be for Owners' account.

27. Owners will pay USD 5.000,00 (five thousand US Dollars) as total indemnity for any extra insurance due to age/flag/class of vessel. This amount will be deducted from freight payment.

28. Owners to pay Charterers despatch money on working time saved at both ends at the rate of USD 4.450,00 (four thousand four hundred and fifty US Dollars) per day /prorata.

29. Notices clause :

**a)**
On fixing, then every 48 hours preliminary notices, 72/48/24 hours definite notices of ETA at loading port are to be sent by Master/Owners to :

- VESSEL'S AGENTS : AMG SHIPPING
                    7 Atlantijas Str., Riga, Latvia
                    VAT # : LV 40003464149
                    Phone: 371-7160446, 7160447, Fax: 7876491
                    Telex: 051-94079513 AMGS G (via U.K.)
                    E-mail : agency@amg-shipping.lv

- MEKATRADE ASIA PTE LTD, SINGAPORE, GENEVA BRANCH
  PHONE : (41-22) 592.05.00
  FAX   : (41-22) 310.93.30
  EMAIL : mekatrade.geneva@mekatrade.com

- MEKATRADE / MOSCOW
  ATTENTION : MR. ABDOU DERKAOUI
  MAIL  : mekatrade.moscow@mekatrade.com

-Upon leaving loading port, Master/Owners to send vessel's ETA at discharging port, Bills of Lading weight and estimated arrival draft to be followed by every 48 hours preliminary notices and 72/48/24 hours definite notice of ETA to :

3

**ADDITIONAL CLAUSES TO THE C/P OF  M/V "GALINA III"
DATED PARIS, 25th MARCH 2009**

### 29. Continued...

- MEKATRADE ASIA PTE LTD, SINGAPORE, GENEVA BRANCH
  PHONE : (41-22) 592.05.00
  FAX  : (41-22) 310.93.30
  EMAIL : mekatrade.geneva@mckatrade.com

- MEKATRADE / MOSCOW
  ATTENTION : MR. ABDOU DERKAOUI
  MAIL : mekatrade.moscow@mekatrade.com

- Vessel's agents : to be advised
- Receivers : to be advised

**b)**
The Master or Owners have to keep all parties continuously advised of any alteration in vessel's ETA at both ends. In the event of Master failing to give notice of the definite arrival date as per above instructions, commencement of the laytime shall be postponed by the number of days by which the notice has fallen short.

**c)**
Owners have an absolute fundamental duty to report immediately to Charterers any change/delay or incident and state the genuine reasons of the revised position versus the one provided at the time of fixing, failing which Owners to be liable for all consequences arising from such change delay of vessel's position.

30. Charterers' liability to cease when cargo is shipped and Bill(s) of Lading signed, except as regards payment of freight, deadfreight, demurrage, if any.

31. Force Majeure Clause :
Any Force Majeure cause, including government interferences, occurring beyond the control of Shippers, respectively Receivers, strike excepted, which may directly prevent the loading and/or discharging of the vessel are not to count as loading/discharging time.

32. Arbitration in  Clause as per « Chambre Arbitrale Maritime de Paris ». French Law to apply:
Any dispute arising out of the present contract shall be referred to arbitration of "Chambre Arbitrale Maritime de Paris" – 16 rue Daunou – 75002 Paris. The decision rendered according to the rules of  "Chambre Arbitrale" and according to French Law shall be final and binding upon both parties. The right of both parties to refer any disputes to arbitration ceases twelve months after date of completion of discharge or, in case of cancellation or non performance, twelve months after the cancelling date as per box 19) or after the actual date of cancellation which is the later. Where this provision is not complied with, the claim shall be deemed to be waived and absolutely barred.

33. The said vessel is now highest classed Lloyds Register or equivalent and this class to be maintained throughout the currency of the charter party and tight, staunch and strong and in every respect fitted for the voyage and so to be maintained while under this charter party.

34. Stevedores' damages, if any, to be settled directly between Owners and stevedores. Master to notify these damages in writing latest twenty four (24) hours after occurrence to stevedores.

4

ADDITIONAL CLAUSES TO THE C/P OF  M/V "GALINA III"
DATED PARIS, 25th MARCH 2009

35. In the event of loss of time, whether total or partial, due to  the terms and conditions on which the members of the crew are employed, all such time lost/ expenses and other consequences to be for Owners' account.

36. Deleted.

37. Under no circumstance are Owners and Brokers concerned in the fixture of this vessel to divulge any detail whatsoever to anyone outside their own organization.

38. Vessel's description :

M/V "GALINA III"
-Flush Tweendecker At Holds Nº 2& 4, Singledecker At Holds Nº 1,3 & 5
-Built 07.1977
-Official number 7526912
-Lloyd's Register of Shipping. Strengthened for heavy cargoes
-Malta Flag
-Port of Registry: Valletta
-Call Sign letters: 9HYJ5
-P.&I. Club: INGOSSTRAKH, MOSCOW
-G.T. : 16.699
-N.R.T. : 8.919
-23.314 DWT on 10,21 meters summer salt water draft.
-23.319 DWT on 10,44 meters fresh summer water draft. TPC: 34,47 MT.
-L.O.A. : 158 meters
-Beam : 24,77 meters.
-Depth to main deck: 14,00 meters.
- Capacity: 31.081 cbm Grain / 29.934 cbm Bale.
-Five holds. Nine hatches (No.1 single hatch, No.2-5 twin hatch.).
-Hatches weatherdeck sizes: nº1 (13,6 x 10,72 M), + nº2, nº4 (20,8 x 9,05 M tween hatch) and nº3, nº5 (13,6 x 9,05 M twin hatch)
-Hatches Tweendeck sizes: nº2, nº4 (22,4 x 9,05 M), Half open 9,8 x 9,05 M. Tweendecks are divided to port and starboard by longitudinal bulkheads.
-Type of Hatch Covers: Steel, watertight, wire pull, folding type.

| COMP. | Length | Width fore / aft | Height | Bale Capacity |
|---|---|---|---|---|
| HD 1 | 17,6 m. | 6,20 / 17,30 m | 12,46 m. | 3.787 cbm |
| LH 2 | 27,2 m | 17,85 / 22,77 m | 7,62m | 4.825 cbm |
| TD 2 P | 27,0 m | 10,8 m | 4,48 m. | 1.490 cbm |
| TD 2 S | 27,0 m | 10,8 m | 4,48 m. | 1.510 cbm |
| HD 3 | 17,6 m | 22,7 m | 12,61 m | 5.290 cbm |
| LH 4 | 27,2 m | 22,77 / 22,00 m | 7,62 m | 4.899 cbm |
| TD 4 P | 27,0 m | 10,8 m | 4,48 m. | 1.490 cbm |
| TD 4 S | 27,0 m | 10,8 m | 4,48 m. | 1.511 cbm |
| HD 5 | 17,6 m | 21,80 / 15,20 m | 12,61 m. | 5.132 cbm |

-Strengths (MT/M2)
 Weather deck + Hatch covers: 2,50 MT/M2,
 Tween deck + Hatch covers: 3,00 MT/M2
-Tank top: 19 MT/M2,
-CO2 System fitted
-Cranes: 2 x 15 MT, serving hatches 1+2 and 2+3. Two sets 2x15 MT cranes serving 3+4 and 4+5. (Combi to 28 MT)
-Main Engine: B&W 2SA6CYL740x1600.
-Speed abt. 11,5 knots on abt.22 MT IFO 180 CST, plus 2,7 MT MDO. Idle abt. 2,0 MT MDO and abt. 3,5 MT MDO working cranes.

5

## ADDITIONAL CLAUSES TO THE C/P OF M/V "GALINA III" DATED PARIS, 25th MARCH 2009

**38. Continued...**

-Constants abt. 400 M/T excluding FW.
-Nationality of Crew: Ukrainian
-INMARSAT C telex 424828511     Fax: N/A, phone: N/A   e-mail: N/A

OWNERS CONFIRM THAT VESSEL:
= IS A SINGLE DECKER: SINGLE IN Nº 1,3 & 5 HOLDS AND TWEEN IN 2 & 4
= IS SUITABLE FOR GRAB DISCHARGE: YES
= INSURER AND H.&M. VALUE: REVERTING
= NAME/PHONE/FAX/TELEX NUMBER OF MIC IN CASE OF EMERGENCY
= ISM NUMBER AND VALIDITY DATE:
   DOC n° 08.127.025   VALID TILL 23 JUNE 2013
   SMC n° 04.0879.025 VALID TILL 23 SEPTEMBER 2009
= LAST 3 CARGOES - SAWN TIMBER IN BUNDLES
= HEADOWNERS STYLE AND ADDRESS : G.A. SHIPPING CO, LTD c/o KAALBYE ODESSA
   DISPONENT OWNERS STYLE AND ADDRESS:  BRISA LINES S.A. MADRID
= PRESENT POSITION / ETA / AGENTS STYLE AT PRESENT PORT:
   CAEN / ETA FLUSHING SUNDAY AFTERNOON / SOGEMAR AGENTS IN CAEN
= OWNERS HAVE SEND FOLLOWING CERTIFICATES : ISM (SMC+DOC)- CLASS – ISSC –
   P.&I. CLUB CERTIFICATE OF ENTRY -
   HEAD OWNERS P&I. : INGOSSTRAKH / DISPONENT OWNERS' P.&I. SKULD, OSLO

= OWNERS CONFIRM THAT :
   -DISTANCE HOOK TO WATER LINE - MIN. 18 M: Disponent Owners confirm that
    distances are as per sketch sent after test conducted on 25-03-2009 16:53 hours
    (see attached)
   -CRANE OUTREACH - MIN. 5.5 M
   -CRANE MIN 15 MT S.W.L.( SAFE WORKING LOAD)
   -MIN. 15 CYCLES PER HOUR: Disponent owners have confirmed that cranes are in
    Good Working Condition. But can not confirm that crane speed is 15 cycles per hour.

39. Vessel will be carrying 50 empty 20' containers on deck. The containers will be
shipped on deck and will be shifted either to 'free' hatch cover or on berth. Same is to be
coordinated with agents.
The loading and discharging of empty containers to be for Owners' time, expense, risk
and responsibility, and in any case same not to interfere with Charterers' operations.

40. Should Shippers/Agents claim that it is not possible to provide for the quantity
required by Master within the contractual quantity agreed, Owners/Master are to
communicate with Charterers as to what should be done before sailing from loading port,
otherwise Charterers  will not be responsible for deadfreight.

41. Owners to agree on following procedure with regards to Bills of Lading :

A)
3/3 Original Bills of Lading to be drawn up at loading port and remain in ship's agents
custody to be released to Shippers.

or in Charterers' option

B)
- 3/3 original Bills of Lading to be drawn up at load port

- 1/3 original Bill of lading to be placed in ship's bag and Master to acknowledge receipt
of same in writing. This 1/3 original Bill of Lading to be remitted to nominated ship

## ADDITIONAL CLAUSES TO THE C/P OF M/V "GALINA III" DATED PARIS, 25th MARCH 2009

### 41. Continued...

agents at discharging port for further transmission to Receivers. Such 1/3 Bill of Lading, once endorsed by Receivers, to be remitted to the Master to allow the discharge of the cargo.
The other 2/3 original Bills of Lading to remain in ship's agents custody to be released to Shippers.

C)
In case original Bill(s) of Lading are not available at discharging port and if required by Charterers, Owners to authorize release of cargo to Charterers' nominated Receivers against providing to Owners a Letter of Indemnity on Owners' P.&I. Club wording only signed by Charterers without any bank guarantee required.
One accomplished original Bill of Lading remitted to Owners or Master makes the two other originals null and void.

42. As soon as drafts of Bill(s) of Lading are ready, these will be sent to Owners for their prior approval. Upon Owners' confirmation, Bill(s) of Lading to be signed as presented by Master, as long as in conformity with Mate's Receipt and no fraud is made.

43. Deleted.

44. ISM Clause :
The requirements of the International Safety Management (ISM) Code are hereby incorporated into the terms of this charter party.
Owners warrant that from the date of coming into force of the ISM Code in relation to the vessel and thereafter during the currency of this charter party, the Owners shall procure that both the vessel and "the Company" (as defined by the ISM Code) shall comply with the requirements of the Code.
Upon request, the Owners shall provide a copy of the relevant "Document of Compliance" (DOC) and "Safety Management Certificate" (SMC) to the Charterers.
Except as otherwise provided in this charter party, loss, damage, expense or delay caused by failure on the part of the Company to comply with the ISM Code shall be for Owners' account and laytime or time on demurrage will not count.

45. Owners warrant that from date of coming into force of the International Ship and Port Facility Security Code (ISPS), the vessel will fully comply with this code and vessel will carry a valid International Ship Security certificate or an Interim International Ship Security certificate on board.

46. Charterers will not agree to the assignment of freight monies due under this charter party, or the charter party itself in any circumstances whatsoever.

***** ***** *****

7



Exhibit D

Adopted by
the Documentary Committee of the General
Council of British Shipping, London
and the Documentary Committee of The Japan
Shipping Exchange, Inc., Tokyo

| 1. Shipbroker | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE<br>UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)<br>INCLUDING "F.I.O." ALTERNATIVE, ETC.<br>(To be used for trades for which no approved form is in force)<br>CODE NAME: "G E N C O N"    Part 1 |
|---|---|
| | 2. Place and date *Paris, the 17th April 2009* |
| 3. *Disponent-Owners/Place of business (Cl. 1)*<br><br>*T-BULK SRL,*<br>*CARRARA, ITALY* | 4. *Charterers/Place of business (Cl. 1)*<br><br>*MERATRADE ASIA PTE LTD, SINGAPORE*<br>*GENEVA BRANCH*<br>*7, PLACE DU MOLARD*<br>*1204 GENEVA*<br>*SWITZERLAND* |
| 5. Vessel's name (Cl. 1)<br>*M/V 'OCEAN LIGHT'* | 6. GRT/NRT (Cl. 1)<br>*14.706/8.251* |
| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)<br><br>*See description clause 38* | 8. Present position (Cl. 1)<br><br>*at CANAKKALE today* |
| 9. Expected ready to load (abt.) Laydays (Cl. 1)<br>*18th April 2009* | |
| 10. Loading port or place (Cl. 1)<br><br>*one/two good safe berth(s), always afloat, NOVOROSSIYSK –*<br><br>*See also Clause 43* | 11. Discharging port or place (Cl. 1)<br>*at Charterers' option one good safe berth, always afloat, DAKAR,*<br>*SENEGAL, OR one good safe berth, always afloat, ABIDJAN, IVORY*<br>*COAST, to be declared upon, starting loading* |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)<br><br>*20,000 metric tons, 10 percent more or less in Owners' option, of BULK UREA, with stowage factor about 51/52 cft/MT, harmless,*<br>*no IMO classified and no Appendix B required.*<br>*Estimated intake: about 20.500/21.500 MT, depending on exact stowage factor, always subject to Master's stowage plan.* | |
| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)<br>*per metric ton F.I.O. spout/grab trimmed*<br><br>*- USD 32,50 (thirty two US Dollars and fifty cents) basis discharging*<br>*DAKAR*<br>*- USD 35,50 (thirty five US Dollars and fifty cents) basis discharging*<br>*ABIDJAN* | 14. Freight payment (state currency and method of payment; also beneficiary<br>and bank account) (Cl. 4)<br><br>*See clause 18* |
| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also<br>indicate if the vessel is gearless)<br><br>*(b)* | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b).<br>If total laytime for load. and disch., fill in c) only) (Cl. 6)<br>a) Laytime for loading<br>*3.500 metric tons as per clause 19A* |
| 17. Shippers (state name and address) (Cl. 6) | b) Laytime for discharging<br>*1.500 metric tons as per clause 19B*<br><br>~~c) Total laytime for loading and discharging~~ |
| 18. Demurrage rate (loading and discharging) (Cl. 7) *USD 11.000,00 per day*<br>*or prorata. See also clause 28.* | 19. Cancelling date (Cl. 10)<br>*22nd April 2009* |
| 20. Brokerage commission and to whom payable (Cl. 14) *3,75% total commission to SEA SATIN SHIPPING S.A., Piraeus, for division*<br>*with TERRMET ET CIE S.A.S., Paris on freight/deadfreight/demurrage, if any.* | |
| 21. Additional clauses covering special provisions, if agreed.<br><br>*Additional clauses n° 18 to 46, both inclusive, as attached hereto, are deemed to be incorporated in this charter party and to apply.* | |

Copyright, published by The Baltic
and International Maritime
Council (BIMCO), Copenhagen

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II.
In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Disponent-Owners) | Signature (Charterers) |
|---|---|
| | |

Computer generated form printed by authority of The Baltic and International Maritime Council (BIMCO), Copenhagen, using software which is the copyright of Strategic Software Ltd.

PART II

"Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O" Alternative, etc.

1.  It is agreed between the party mentioned in Box 3 as Owners of the     1
    steamer or motor-vessel named in Box 5, of the gross/net Register     2
    tons indicated in Box 6 and carrying about the number of tons of      3
    deadweight cargo stated in Box 7, now in position as stated in Box 8   4
    and expected ready to load under this Charter about the date in-      5
    dicated in Box 9, and the party mentioned as Charterers in Box 4      6
    that:                                                                 7
    The said vessel shall proceed to the loading port or place stated     8
    in Box 10 or so near thereto as she may safely get and lie always     9
    afloat, and there load a full and complete cargo (if shipment of deck  10
    cargo agreed same to be at Charterers' risk) as stated in Box 12      11
    (Charterers to provide all trade wood for dunnage and any             12
    separation required, the Owners allowing the use of any dunnage       13
    wood on board if required) which the Charterers bind themselves to    14
    ship, and being so loaded the vessel shall proceed to the dischar-    15
    ging port or place stated in Box 11 or so near as she may safely get  16
    and lie, so near thereto as she may safely get and lie always         17
    afloat and there deliver the cargo on being paid freight on delivered  18
    or intaken quantity as indicated in Box 13 at the rate stated in      19
    Box 13; Owners to satisfy themselves with ports/berths restrictions both  20
    at loading and at discharging.

2.  Owners' Responsibility Clause                                         21
    Owners are to be responsible for loss of or damage to the goods       22
    or for delay in delivery of the goods only in case the loss, damage   23
    or delay has been caused by the improper or negligent stowage of      24
    the goods but Owners/Master to remain responsible for proper stowage  25
    (unless stowage performed by shippers/Charterers or their             26
    stevedores or servants) or by personal want of due diligence on the   27
    part of the Owners or their Manager to make the vessel in all respects  28
    seaworthy and to secure that she is properly manned, equipped and     29
    supplied or by the personal act or default of the Owners or their     30
    Manager.                                                              31
    And the Owners are responsible for no loss or damage or delay          32
    arising from any other cause whatsoever, even from the neglect or     33
    default of the Captain or crew or some other person employed by the   34
    Owners on board or ashore for whose acts they would, but for this     35
    clause, be responsible, or from unseaworthiness of the vessel on      36
    loading or commencement of the voyage or at any time whatsoever.      37
    Damage caused by contact with or leakage, smell or evaporation        38
    from other goods or by the inflammable or explosive nature or in-     39
    sufficient package of other goods not to be considered as caused      40
    by improper or negligent stowage, even if in fact so caused.

3.  Deviation Clause                                                      41
    The vessel has liberty to call at any port or ports in any order, for  42
    any purpose, to sail without pilots, to tow and/or assist vessels in   43
    all situations, and also to deviate for the purpose of saving life and/  44
    or property.                                                          45

4.  Payment of Freight - see clause 18 -                                  46
    The freight to be paid in the manner prescribed in Box 14 in cash     47
    without discount on delivery of the cargo at mean rate of exchange    48
    ruling on day or days of payment, the receivers of the cargo being    49
    bound to pay freight on account during delivery, if required by Cap-  50
    tain or Owners,                                                       51
    Cash for vessel's ordinary disbursements at port of loading to be     52
    advanced by Charterers if required at highest current rate of ex-     53
    change, subject to two per cent. to cover insurance and other ex-     54
    penses.                                                               55

5.  Loading/Discharging Costs                                             56
    (a) Gross Terms                                                       57
    The cargo to be brought alongside in such a manner as to enable       58
    vessel to take the goods with her own tackle. Charterers to procure   59
    and pay the necessary men on shore or on board the lighters to do     60
    the work there, vessel only bearing the cargo on board.               61
    If the loading takes place by elevator, cargo to be put free in       62
    vessel's holds, Owners only paying trimming expenses.                 63
    Any pieces and/or packages of cargo over two tons weight, shall be    64
    loaded, stowed and discharged by Charterers at their risk and expense.  65
    The cargo to be received by Merchants at their risk and expense       66
    alongside the vessel not beyond the reach of her tackle.              67
    (b) F.I.O. and free stowed spout/grab trimmed                         68
    The cargo shall be brought into the holds, loaded, stowed spout and/or grab  69
    trim-                                                                 
    med and taken from the holds and discharged by the Charterers or      70
    their Agents, free of any risk, liability and expense whatsoever to the  71
    Owners.                                                               72
                                                                          73
    The Owners shall provide winches, motive power and winchmen from      
    the Crew if requested and/or permitted; if not, the Charterers shall  74
    provide and pay for winchmen from shore another source, if any. (This  75
    provision shall not apply if vessel is gearless and stated as such in  76
    Box 15).                                                              77
    Indicate alternative (a) or (b), as agreed, in Box 15.                78

6.  Laytime - see clause 19.                                              79
    (a) Separate laytime for loading and discharging                      80
    The cargo shall be loaded within the number of running hours as       81

— column break —

    indicated in Box 16, weather permitting, Sundays and holidays ex-     82
    cepted, unless used, in which event time actually used shall count.    83
    The cargo shall be discharged within the number of running hours      84
    as indicated in Box 16, weather permitting, Sundays and holidays ex-  85
    cepted, unless used, in which event time actually used shall count.    86
    (b) Total laytime for loading and discharging                         87
    The cargo shall be loaded and discharged within the number of total   88
    running hours as indicated in Box 16, weather permitting, Sundays and  89
    holidays excepted, unless used, in which event time actually used     90
    shall count.                                                          91
    (c) Commencement of laytime (loading and discharging)                 92
    Laytime for loading and discharging shall commence at 1 p.m. if       93
    notice of readiness is given before noon, and at 6 a.m. next working   94
    day if notice given during office hours after noon. Notice at loading  95
    port to be given to the Shippers named in Box 17.                     96
    Time actually used before commencement of laytime shall count.        97
    Time lost in waiting for berth to count as loading or discharging     98
    time, as the case may be.                                             99
    Indicate alternative (a) or (b) as agreed, in Box 16.                100

7.  Demurrage                                                            101
    Ten running days on demurrage at the rate stated in Box 18 per       102
    day or pro rata for any part of a day, payable day by day, to be      103
    allowed Merchants altogether at ports of loading and discharging to be paid  104
    as per clause 18.

8.  Lien Clause                                                          105
    Owners shall have a lien on the cargo for freight, dead-freight,     106
    demurrage and damages for detention. Charterers shall remain re-     107
    sponsible for dead-freight and demurrage (including damages for       108
    detention), incurred at port of loading. Charterers shall also remain  109
    responsible for freight and demurrage (including damages for deten-  110
    tion) incurred at port of discharge, but only to such extent as the   111
    Owners have been unable to obtain payment thereof by exercising      112
    the lien on the cargo.                                               113

9.  Bills of Lading                                                      114
    The Captain to sign Bills of Lading at such rate of freight as       115
    presented without prejudice to this Charterparty, but should the      116
    freight by Bills of Lading amount to less than the total chartered    117
    freight the difference to be paid to the Captain in cash on signing   118
    Bills of Lading.                                                      119

10. Cancelling Clause                                                    120
    Should the vessel not be ready to load (whether in berth or not) on   121
    or before the date indicated in Box 19, Charterers have the option    122
    of cancelling this contract, such option to be declared, if demanded,  123
    at least 48 hours before vessel's expected arrival at port of loading.  124
    Should the vessel be delayed on account of average or otherwise.      125
    Charterers to be informed as soon as possible, and if the vessel is   126
    delayed for more than 10 days after the day she is dated to be       127
    expected ready-to-load, Charterers have the option of cancelling the  128
    contract, unless a cancelling date has been agreed upon.             129

11. General Average                                                      130
    General average to be settled in London according to York-Antwerp Rules,  131
    1974. Proprietors of cargo to pay the cargo's share in the general    132
    expenses even if same have been necessitated through neglect or       133
    default of the Owners' servants (see clause 2).                      134

12. Indemnity                                                            135
    Indemnity for non-performance of this Charterparty, proved damages,   136
    not exceeding estimated amount of freight.                           137

13. Agency                                                              138
    In every case the At both ends.                                      139
    Agents to be selected by Charterers and appointed by Owners who are   
    paying usual fees/tariff. Owners shall appoint his own Broker or Agent both  
    at the port of loading and the port of discharge.                    140

14. Brokerage                                                           141
    A brokerage commission at the rate stated in Box 20 on the freight,   142
    dead-freight and demurrage                                           
    earned is due to the party mentioned in Box 20.                      143
    In case of non-execution at least 1/3 of the brokerage on the estimated  144
    amount of freight and dead-freight to be paid by the Owners to the    145
    Brokers as indemnity for the latter's expenses and work. In case of   146
    more voyages the amount of indemnity to be mutually agreed.          147

15. GENERAL STRIKE CLAUSE                                                148
    Neither Charterers nor Owners shall be responsible for the con-      149
    sequences of any strikes or lock-outs preventing or delaying the      150
    fulfilment of any obligations under this contract.                   151
    If there is a strike or lock-out affecting the loading of the cargo,   152
    or any part of it, when vessel is ready to proceed from her last port  153
    or at any time during the voyage to the port or ports of loading or   154
    after her arrival there, Captain or Owners may ask Charterers to      155
    declare, that they agree to reckon the laydays as if there were no    156
    strike or lock-out. Unless Charterers have given such declaration in  157
    writing (by telegram, if necessary) within 24 hours, Owners shall     158

This document is a computer generated GENCON form printed by authority of The Baltic and International Maritime Council (BIMCO), using software which is the copyright of Strategic Software Ltd. (SSL).
Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document, and which is not clearly visible, then the original BIMCO approved document shall apply. BIMCO and SSL assume no responsibility for any loss or damage caused as a result of discrepancies between the original BIMCO approved document and this document.

PART II
"Gencon" Charter (As Revised 1922 and 1976)
Including "F.I.O." Alternative, etc.

have the option of cancelling this contract. If part cargo has already    169
been loaded, Owners must proceed with same, (freight payable on         160
loaded quantity only) having liberty to complete with other cargo       161
on the way for their own account.                                        162
If there is a strike or lock-out affecting the discharge of the cargo    163
on or after vessel's arrival at or off port of discharge and same has    164
not been settled within 48 hours, Receivers shall have the option of     165
keeping vessel waiting until such strike or lock-out is at an end        166
against paying half demurrage after expiration of the time provided      167
for discharging, or of ordering the vessel to a safe port where she      168
can safely discharge without risk of being detained by strike or lock-   169
out. Such orders to be given within 48 hours after Captain or Owners     170
have given notice to Charterers of the strike or lock-out affecting      171
the discharge. On delivery of the cargo at such port, all conditions     172
of this Charterparty and of the Bill of Lading shall apply and vessel    173
shall receive the same freight as if she had discharged at the          174
original port of destination, except that if the distance of the sub-   175
stituted port exceeds 100 nautical miles, the freight on the cargo      176
delivered at the substituted port to be increased in proportion.         177

16.  War Risks ("Voywar 1950") Voywar 1993 to apply. See attached.       178

17.  GENERAL ICE CLAUSE                                                   251
Port of loading                                                          252

(struck-through text throughout remainder of page)

This document is a computer generated GENCON form printed by authority of The Baltic and International Maritime Council (BIMCO), using software which is the copyright of Strategic Software Ltd. (SSL.)...

## ADDITIONAL CLAUSES TO THE C/P OF M/V "OCEAN LIGHT" DATED PARIS 17th APRIL 2009

18. Payment of freight :

Freight is payable on Bill(s) of Lading intaken weight but always limited to the maximum quantity stated in box n° 12.

Freight is payable 98% less commissions and agreed despatch, on Bill(s) of Lading intaken weight within 3 (three) banking days after signing/releasing Bills of Lading marked "Clean on Board" and "Freight payable as per Charter Party" or in Charterers' option "Freight Prepaid".

In the later case, Bill(s) of Lading to be released only when the freight due to Owners has been irrevocably remitted into Owners' nominated bank account and received in full by Owners.

Balance of freight / settlement of despatch/demurrage, if any, is payable within 20 days of completion of discharge and receipt by Charterers of Owners' final freight account, together with demurrage and despatch calculations supported by copies of Notice of Readiness and Statement of Facts.

Freight is deemed earned as cargo being loaded, discountless, ship and/or cargo lost or not lost.

Owners to instruct Master or their agents that "Clean on board' Bills of Lading to be issued, in which case Master has the right to reject damaged cargo and same to be replaced by Charterers with sound one at their time/expenses.

Should the Master have any doubt as to the quality of the goods presented for loading, his obligation is to immediately stop the loading and to advice Charterers in writing through Owners' brokers. An independent Surveyor specialised in fertilisers shall then be appointed by Charterers at their costs to determine whether cargo may be considered "Clean" or not. The time so lost will be for Charterers and the decision so taken will be final.

Freight to be paid to :
Unicredit Corporate Banking
Branch: Carrara
USD bank account: 000030101169
Swift code: UNCRIT2VCRR
In favour of T-Bulk Srl
Ref : M/V "OCEAN LIGHT"/acct MEKATRADE/CP dd 17.04.09

19.
A)
Laytime at loading port shall commence at 2 p.m. if Notice of Readiness is given before noon, noon excluded, and 8 a.m. on next working day if Notice of Readiness is given during office hours after noon, noon included, whether in berth or not, whether in port or not, whether in customs clearance or not, whether in free pratique or not, unless due to sanitary reasons, provided berth congested, Friday 5 p.m. Saturdays, Sundays (or local equivalent) and holidays excepted.

Laytime at the average rate indicated in box 16-a) per weather working day of 24 consecutive hours, time from Friday 5 p.m. till 8 a.m. on Monday (or local equivalent) and from 5 p.m. on a day preceding a local/legal holiday until 8 a.m. on next working day not to count, even if used.

1

## ADDITIONAL CLAUSES TO THE C/P OF M/V "OCEAN LIGHT" DATED PARIS 17th APRIL 2009

19. Continued......

B)
Laytime at discharging port shall commence at 2 p.m. if Notice of Readiness is given before noon, noon excluded, and 8 a.m. on next day if Notice of Readiness is given during office hours after noon, noon included, whether in berth or not, whether in port or not, whether in customs clearance or not, whether in free pratique or not, unless due to sanitary reasons, provided berth congested, Sundays (or local equivalent) and Holidays included.

Laytime at the average rate indicated in box 16-b) per weather working day of 24 consecutive hours, Sundays and Holidays included.

C)
Time for proceeding from anchorage to loading or discharging berth not to count as laytime, even if vessel already on demurrage.

Laytime not to be reversible between loading and discharging.

Any time used prior commencement of laycan/laytime shall count as laytime at loading and discharging ports.

20. Vessel's holds to be odourless, properly swept, cleaned and dried to Shippers' or Charterers' representative satisfaction before tendering notice of readiness.

Vessel to be clean and ready in every respect to load on arrival to an independent surveyor's satisfaction, who to conduct condition/holds/hatches survey, as well as hose test. If the vessel fails inspection, Owners are to expedite cleaning at their time and expenses.

21. Owners warrant that the vessel is fully and in every way suitable for the carriage of the contracted cargo.
The vessel will be spout/grab trimmed at loading. In the event Master requires additional trimming over and above the normal spout/grab trimming, time and expense to be for Owners' account.
Cargo to be loaded in unobstructed main holds only, excluding any other place and all space is guaranteed suitable for grab discharge, suitable for bulldozer discharge in case of bulk cargo, always in accordance with the maximum allowed pressure per square meters.
No cargo to be loaded in deeptanks or any other awkward places.
Any cost resulting from merchandise not being accessible to Receivers' grabs to be for Owners' account and time so lost not to count.

22. All opening and closing of hatches at loading and discharging port is to be done or paid for by the vessel and time so used to count as laytime.

23. Whenever required, vessel shall supply free use of light as on board, but sufficient to carry on night work.

24. Provided described as geared, vessel to be in possession of a valid certificate of efficiency for winches and derricks for the duration of this charter party and to supply, whenever required, at each port, at all times, free of charge to Charterers, winches and gear and the necessary power, in good working order, including ropes and slings as required for loading and discharging the cargo.

2

## ADDITIONAL CLAUSES TO THE C/P OF M/V "OCEAN LIGHT" DATED PARIS 17th APRIL 2009

24. Continued......

Any time lost on account of failure in the facilities and/or insufficient power and/or of a breakdown of winches/gears, shall not count as laytime or time on demurrage. The laytime to be extended prorata for the period of such inefficiency in relation to the number of working gangs available.

25. At both ends taxes/dues on cargo/freight to be for Charterers' account.
At both ends taxes/dues on vessel to be for Owners' account.
Vessel's disbursements accounts, both at loading and discharging ports, to be paid directly by the Owners to the agents and to be properly provisioned prior vessel's arrival, failing which Owners to be responsible for any delay and/or expenses arising therefrom.

26. Overtime to be for account of the party ordering same, but Officers and crew's overtime to be for Owners' account, unless ordered by Port Authorities in which case to be for Charterers' account.

27. Any extra insurance due to age/flag/class of vessel to be for Charterers' account.

28. Owners to pay Charterers despatch money on all working time saved at both ends at the rate of USD 5.500,00 per day /prorata.

29. Notices clause :
a)
On fixing, then every 48 hours preliminary notices, 48/24 hours definite notices of ETA at loading port are to be sent by Master/Owners to :

- VESSEL'S AGENTS : UNISERVICES LLC
              MR LEONOV ANDREY
              MOBILE : +78617 624918
              TEL. OFFICE : +7 8617 724324
              EMAIL: UNISERVICE@NVRSK.RU

- MEKATRADE ASIA PTE LTD,SINGAPORE, GENEVA BRANCH
  PHONE : (41-22) 592.05.00
  FAX   : (41-22) 310.93.30
  EMAIL : MEKATRADE.GENEVA@MEKATRADE.COM

- MEKATRADE / MOSCOW
  ATTENTION : MR. ABDOU DERKAOUI
  EMAIL   : mekatrade.moscow@mekatrade.com

-Upon leaving loading port, Master/Owners to send vessel's ETA at discharging port, Bills of Lading weight and estimated arrival draft to be followed by every 48 hours preliminary notices and 72/48/24 hours definite notice of ETA to :

- MEKATRADE ASIA PTE LTD,SINGAPORE, GENEVA BRANCH
  PHONE : (41-22) 592.05.00
  FAX   : (41-22) 310.93.30
  EMAIL : MEKATRADE.GENEVA@MEKATRADE.COM

-Vessel's agents : to be advised

-Receivers : to be advised

3

## ADDITIONAL CLAUSES TO THE C/P OF M/V "OCEAN LIGHT" DATED PARIS 17th APRIL 2009

29. Continued......

**b)**
The Master or Owners have to keep all parties continuously advised of any alteration in vessel's ETA at both ends. In the event of Master failing to give notice of the definite arrival date as per above instructions, commencement of the laytime shall be postponed by the number of days by which the notice has fallen short.
If the vessel is not ready to load/discharge latest noon the day for which definite notice has been given, consequences resulting therefrom including demurrage on barges or rail cars or warehouses at loading/discharging port to be for Owners' account, unless due to unforeseen circumstances for which Owners/Master cannot be held liable.

**c)**
Owners have an absolute fundamental duty to report immediately to Charterers any change/delay or incident and state the genuine reasons of the revised position versus the one provided at the time of fixing, failing which Owners to be liable for all consequences arising from such change delay of vessel's position.

30. Charterers' liability to cease when cargo is shipped and Bill(s) of Lading signed, except as regards payment of freight, deadfreight, demurrage, or any other liability under charter party terms, if any.

31 Force Majeure Clause :
Any Force Majeure cause, including government interferences, occurring beyond the control of Shippers, respectively Receivers, strike excepted, which may directly prevent the loading and/or discharging of the vessel are not to count as loading/discharging time.

32. Arbitration :
This contract is governed by English Law and all disputes arising under or in connection with it shall be referred to arbitration in London. The arbitration shall be conducted in accordance with one of the following LMAA procedures:

i) where the amount claimed by the claimants is less than USD        (note : where no figure is inserted, the parties shall be deemed to have agreed a limit of USD 250,000,00, excluding interest), excluding interest, the reference shall be to a sole arbitrator and the arbitration shall be conducted in accordance with the LMAA FALCA Rules;

ii) where the amount claimed by the claimants is less than USD 50,000,00 (fifty thousand US Dollars), excluding interest (or such other sum as the parties may agree) the reference shall be to a sole arbitrator and the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure;

iii) In any case where the LMAA procedures referred to above do not apply the reference shall be to three arbitrators (one to be appointed by each of the parties and the third by the arbitrators so chosen) in accordance with the LMAA terms in force at the relevant time.

33. The said vessel is now highest classed Lloyds Register or equivalent and this class to be maintained throughout the currency of the charter party and tight, staunch and strong and in every respect fitted for the voyage and so to be maintained while under this charter party.

34. Stevedores' damages, if any, to be settled directly between Owners and stevedores but Charterers to assist their utmost. Master to notify these damages in writing latest twenty four (24) hours after occurrence to stevedores.

## ADDITIONAL CLAUSES TO THE C/P OF  M/V "OCEAN LIGHT"
## DATED PARIS 17th APRIL 2009

35. In the event of loss of time, whether total or partial, due to the terms and conditions on which the members of the crew are employed, all such time lost/ expenses and other consequences to be for Owners' account.

36. Owners guarantee that the vessel fixed under this charter party is not wholly or partially owned by Israeli interests, and will not call at any Israeli ports from date of fixture until completion of discharge of cargo. Owners further guarantee that this vessel is not on the Arab Black List and undertake to provide a certificate from Arab Authorities, if so required, and allow Bill(s) of Lading to be so attested if requested.

37. Under no circumstance are Owners and Brokers concerned in the fixture of this vessel to divulge any detail whatsoever to anyone outside their own organization.

38. Vessel's description :

### M.V. " OCEAN LIGHT"
(EX RAFFLES LIGHT )
Owner: OCEAN LIGHT SHIPPING SA PANAMA
Call sign: 3EHC3  Inmarsat C:   Inmarsat B:
Official no.  IMO no. 9119074
Single deck timber/bulk carrier, Class NK, Panama registry, Safety Management
Certificate no.: RSP-SMC-1545
38. Continued ...

Built:  August 1995 Saiki Heavy Industries Co. Ltd., Japan
Last d/d: September 2005 Unithai Shipyard / Special survey due: August 2010
Dwt:        24,325 mt on 9.733m summer draft
LOA:        153.94M       Beam: 26.0m         Molded depth: 13.35m
Gross tonnage: 14,704 (International)      Net tonnage: 8,251 (International)
Light displacement tonnage: 5,501 mt
Gear: 4x30t SWL Mitsubishi electro-hydraulic cranes
Crane outreach: no. 1: 22 meters from centerline: no. 2-4 : 24 meters from centerline
4 holds: 4 Nakata Macgregor trans-folding jackknife hydraulically activated steel hatch covers

| Cargo hold capacity: | Grain (Cuft) | Bale (Cuft) |
|---|---|---|
| No.1 | 254,165 | 245,678 |
| No.2 | 277,254 | 271,503 |
| No.3 | 277,039 | 271,386 |
| No.4 | 276,287 | 269,576 |
| Totals: | 1,084,745 | 1,058,143 |

Holds 2/3 are box shape with no lower hopper
Australian hold ladders: mechanical ventilation: $CO_2$ fitted

Hatch size:

| Hold | Length | Width |
|---|---|---|
| No.1 | 19.2 m | 12.72 m |
| No.2/3 | 20.0 m | 17.52 m |
| No.4 | 20.8 m | 17.52 m |

Approximate flat tank top dimensions:

| Hold | Length | Width |
|---|---|---|
| No.1 | 29.6 m | 6.8 m (F) / 22.4 M (A) |
| No. 2 | 28.8 m | 22.4 m |
| No.3 | 28.8 m | 22.4 m |
| No.4 | 28.8 m | 22.0 m (F) / 6.0 m (A) |

## ADDITIONAL CLAUSES TO THE C/P OF M/V "OCEAN LIGHT" DATED PARIS 17ᵗʰ APRIL 2009

38. Continued ...

Fitted with 13 permanent 8m log stanchions/side and 26 collapsible 8m stanchions/side, full set lashing materials on board
Height from deck to underside of crane pedestal platform 8.9m, from hatch cover to underside of jib crane 6.0 m
Constants: 150 tons+85 tons unpumpable ballast

| Deadweight/draft: | Ordinary | Timber |
|---|---|---|
| Tropical | 25,021 mt on 9.935m | 26,080 mt on 10.241 m |
| Summer | 24,325 mt on 9.733m | 25,356 mt on 10.032 m |
| Winter | 23,633 mt on 9.531m | 24,397 mt on 9.754 m |
| Winter North Atlantic | - | 23,633 mt on 9.531 m |
| TPC fully laden: | 34.2 mt | |
| TPC at 15,000 dwt | 32.1 mt | |
| Panama Gross: | - | |
| Panama Net: | 12,328.00 | |
| Suez Gross: | 14,999.23 | |
| Suez Net: | 13,524.45 | |
| Bunker capacity: | 1,030.88 cbm IFO, 79.63 cbm MDO | |
| Ballast capacity: | 8,120.29 cbm total | |
| Strengths: | | |
| Tanktop | 15.00 mt/m2 | |
| | | |
| Hatch covers | 3.00 mt/m2 | |
| Deck | 3.67 mt/m2 | |

Maximum airdraft 34.25m in ballast condition, distance from water line to top of hatchcoaming 6.48m laden condition, in ballast condition 11.30m at forward end of no.1, 10.00m amidship, 9.15m at aft end of no.4
Main engine Mitsui MAN B&W 7S35MC Diesel MCR 6,650 PS @ 170 rpm
Two 400 KW Yanmar M200L-UN auxiliary powered generator sets
Speed/consumption (Bunkers in accordance with ISO-8217: 1996 RMG 35 and ISO-DMB):
About 13 knots on about 18.0 Omt/day laden / 17.0mt/day ballast plus about 0.6mt/day MDO
Speed/consumption under good weather, no adverse current, no negative influence of swell, and maximum wind Beaufort 4
Main engine consuming MDO in confined waters and while maneuvering
Port consumption gear idle: about 0.6 mt/day IFO + 0.8 mt/day MDO
Gear working 24 hours/day: about 1.2 mt/day IFO + 1.5 mt/day MDO

| | |
|---|---|
| Owners P&I: | WEST OF ENGLAND |
| H&M Value: | US$ 24.000.000 |
| Commercial Managers: | S. ROUSSOS MAN & CHART SA |
| Technical managers: | DITTO |
| Indian/Phillipino crew/officers number: | 20 |

All details are about, given in good faith, believed to be correct, but without guarantee and are subject to change.

OWNERS CONFIRM THAT VESSEL:
= IS A SINGLE DECKER: YES
= IS SUITABLE FOR GRAB DISCHARGE: YES
= INSURER AND H.&M. VALUE: PRICE FORBES / USD 24 MIO

## ADDITIONAL CLAUSES TO THE C/P OF  M/V "OCEAN LIGHT"
## DATED PARIS 17th APRIL 2009

38. Continued ...

= NAME/PHONE/FAX/TELEX NUMBER OF MIC IN CASE OF EMERGENCY:
   DISPONENT OWNERS MIC FOR OPERATIONAL MATTERS:
   Capt Antonio Marsili
   Dir ph.: +39 0585 507383 – Mob: +39 347 2823945
   Fax +39 0585 507381  Skype: marsili_office
   Email ops@t-bulk.com
= ISM NUMBER AND VALIDITY DATE
   DOC: RSP-DOC-0571 / VALID UNTIL 9th Aug, 2009
   SMC: RSP-SMC-1545 / VALID UNTIL 21st Jan, 2012
= LAST 3 CARGOES : PIG IRON/STEELS/CORN (LAST)
= HEADOWNERS STYLE AND ADDRESS/ DISPONENT OWNS STYLE AND ADDRESS
   OCEAN LIGHT SHIPPING SA PANAMA/ T-BULK SRL CARRARA ITALY
= PRESENT POSITION / ETA / AGENTS STYLE AT PRESENT: CANAKKALE TDAY
= OWNERS TO SEND FOLLOWING CERTIFICATES : ISM – CLASS – P.&I./ CLUB –
   CERTIFICATE OF ENTRY – DOCS OF COMPLIANCE
= OWNERS' P.&I.: WEST OF ENGLAND
= DISPONENT OWNERS' P.&I. : STEAMSHIP MUTUAL

VESSEL TO BE FULLY P.&I. COVERED FOR THE DURATION OF THE CHARTER PARTY

OWNERS CONFIRM THAT:
= DISTANCE HOOK TO WATER LINE – MIN. 18 M: ok on laden condition
= CRANE OUTREACH - MIN. 5.5 M: VSL CRANES OUTREACH ON WORKING
   CONDITIONS IS CRANE N. 1 ABT 9MTRS AND CRANES 2,3 +4 ABT 11 MTRS
= CRANE MIN 15 MT S.W.L. (SAFE WORKING LOAD)
= MIN. 15 CYCLES PER HOUR: Not confirmed

39. Deleted.

40. Should Shippers/Agents claim that it is not possible to provide for the quantity
required by Master within the contractual quantity agreed, Owners/Master will inform
Charterers as soon as possible.
(In case of emergency: Marino Hadzopoulos: +41.795981929 /
                       Sophie Cornaz    :  +41.793731212)

41. Owners to agree on following procedure with regards to Bills of Lading :
3/3 Original Bills of Lading to be drawn up at loading port and remain in ship's agents
custody to be released to Shippers.

In case of "Freight prepaid" Bills of Lading, then Bills of Lading to be released only when
the freight due to Owners has been irrevocably remitted into Owners' nominated bank
account and received in full by Owners.

In case original Bill(s) of Lading are not available at discharging port and, if required by
Charterers, Owners to authorize release of cargo to Charterers' nominated Receivers
against providing to Owners a Letter of Indemnity on Owners' P.&I. Club wording, only
signed by Charterers, without any bank guarantee required.

42. Bills of lading to be signed as presented, always in conformity with Mates or tally
clerk's receipts.

The following remark to be inserted on the Bills of Lading: "Marchandises en
transbordement et/ou en transit". However, Owners/Master/carrier responsibility to
cease at discharging port.

Charterers confirm that Congen '94 Bill of Lading form will be issued.

Paramount/New Jason/Both to Blame collision clause to be inserted in Bills of Lading.

7

## ADDITIONAL CLAUSES TO THE C/P OF M/V "OCEAN LIGHT"
## DATED PARIS 17th APRIL 2009

43. Cost of shifting between berths and cost for second berth to be always for Charterers' account and time to count as laytime, always subject to vessel's safe trim/stability between the two berths.

44. ISM Clause :
The requirements of the International Safety Management (ISM) Code are hereby incorporated into the terms of this charter party.
Owners warrant that from the date of coming into force of the ISM Code in relation to the vessel and thereafter during the currency of this charter party, the Owners shall procure that both the vessel and "the Company" (as defined by the ISM Code) shall comply with the requirements of the Code.
Upon request, the Owners shall provide a copy of the relevant "Document of Compliance" (DOC) and "Safety Management Certificate" (SMC) to the Charterers.
Except as otherwise provided in this charter party, loss, damage, expense or delay caused by failure on the part of the Company to comply with the ISM Code shall be for Owners' account and laytime or time on demurrage will not count.

45. BIMCO ISPS/MTSA CLAUSE FOR VOYAGE CHARTER PARTIES 2005 :
(a)(i) The Owners shall comply with the requirements of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) relating to the Vessel and "the Company" (as defined by the ISPS Code). If trading to or from the United States or passing through United States waters, the Owners shall also comply with the requirements of the US Maritime Transportation Security Act 2002 (MTSA) relating to the Vessel and the "Owner" (as defined by the MTSA).
(ii) Upon request the Owners shall provide the Charterers with a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) and the full style contact details of the Company Security Officer (CSO).
(iii) Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Owners or "the Company"/"Owner" to comply with the requirements of the ISPS Code/MTSA or this Clause shall be for the Owners' account, except as otherwise provided in this Charter Party.

(b)(i) The Charterers shall provide the Owners and the Master with their full style contact details and, upon request, any other information the Owners require to comply with the ISPS Code/MTSA.
(ii) Loss, damages or expense (excluding consequential loss, damages or expense) caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account, except as otherwise provided in this Charter Party, and any delay caused by such failure shall count as laytime or time on demurrage.

(c) Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code/MTSA, the following shall apply:
(i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code/MTSA.
(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code/MTSA shall count as laytime or time on demurrage, unless such measures result solely from the negligence of the Owners, Master or crew or the previous trading of the Vessel, the nationality of the crew or the identity of the Owners' managers.

8

## ADDITIONAL CLAUSES TO THE C/P OF M/V "OCEAN LIGHT" DATED PARIS 17th APRIL 2009

45. Continued ...

**(d)** Notwithstanding anything to the contrary provided in this Charter Party, any costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code/MTSA including, but not limited to, security guards, launch services, vessel escorts, security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the negligence of the Owners, Master or crew or the previous trading of the Vessel, the nationality of the crew or the identity of the Owners' managers. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

**(e)** If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

46. Charterers will not agree to the assignment of freight monies due under this charter party, or the charter party itself in any circumstances whatsoever.

*******************

9

## ADDITIONAL CLAUSES TO THE C/P OF M/V "OCEAN LIGHT"
## DATED PARIS 17ᵗʰ APRIL 2009

### BIMCO STANDARD WAR RISKS CLAUSE FOR VOYAGE CHARTERING, 1993
### Code Name: "VOYWAR 1993"

1.    For the purpose of this Clause, the words:

(a) "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel and the Master; and

(b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which in the reasonable judgment of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons onboard the Vessel.

2.    If at any time before the Vessel commences loading, it appears that, in the reasonable judgment of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose, or may be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons on board the Vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

3. The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgment of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfillment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

10

## ADDITIONAL CLAUSES TO THE C/P OF M/V "OCEAN LIGHT"
## DATED PARIS 17th APRIL 2009

**4.** If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgment of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

5. The Vessel shall have liberty:

(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions;

(b) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same and with national laws aimed at enforcing the same to which the Owners are subject and to obey the orders and directions of those who are charged with their enforcement;

(d) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(e) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

(f) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.

6. If in compliance with any of the provisions of sub-clauses (2) to (5) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.

*******************



Exhibit E



MEKATRADE Asia Pte Ltd, Singapore
Geneva Branch

BAUCHE S.A.
4, Rue Jean Nicot
75007 PARIS

Ref.CG/                                          Geneva, 16/07/09

## DEBIT NOTE NR 07.0276 /16.07.09

**M/V GALINA III - B/L 14/04/09**
Discharging Abidjan - Urea 20.698,200mts
04/05/09 -- 07/07/09

DEMURRAGE for your account
Final calculation as per attached time sheet.

This invoice cancels and replaces the previous one sent on 10/06/09

                              TO YOUR DEBIT   ........   **USD 432.224, 79**

OUR VAT NUMBER : 602638 -- EXPORT VAT 0%

Payment terms : upon receipt of invoice
Through :
Banque Cantonale de Genève
Quai de l'Ile 17
CH – 1211 GENEVE 2

Swift : BCGECHGG
USD account : 5011.84.64
IBAN : CH07 0078 8000 0501 1846 4
Correspondent bank : CITIBANK / NY



MEKATRADE Asia – 360 Orchard Road #12-01A International Building – 238869 Singapore – Singapore

Place du Molard, 7                    Tel : +41 22 592 05 00
1204 Geneva                           Fax : +41 22 310 93 30
Switzerland                    Email : mekatrade.geneva@mekatrade.com



*Mekatrade: Laytime Calculation*                    16/07/2009        Page: 1

M/V    **GALINA III**

| Partner | BAUCHE |
| From/To | |
| Details | |
| C/P | |

Calculating Non reversible; Once on demurrage, always on demurrage

| Discharging at | **ABIDJAN** |
| Calculating | Non reversible; Counting working time saved |
| Cargo | mts | 20 698,200 UREE |
| Allowance | mts/day | 1 500,000 |
| Demurrage rate | USD/day | 8 900,00 |
| Despatch rate | USD/day | 4 450,00 |

| Mon | 04.05.2009 | 03:00 | Vessel arrived |
| Mon | 04.05.2009 | 03:00 | Notice tendered |
| Wed | 06.05.2009 | 18:40 | Vessel berthed |
| Thu | 07.05.2009 | 19:30 | Discharging commenced |
| Mon | 04.05.2009 | 03:00 | Laytime commenced |
| Tue | 07.07.2009 | 11:30 | Operations completed |

| Date | From | Until | % to count | Remarks/Description | Time used | Total time days  hh:mm |
|---|---|---|---|---|---|---|
| Mon 04.05.2009 | 03:00 | 24:00 | 100,00 | | 21:00 | 0  21:00 |
| Tue 05.05.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 1  21:00 |
| We 06.05.2009 | 00:00 | 16:20 | 100,00 | | 16:20 | 2  13:20 |
| | 16:20 | 18:40 | 0,00 | Time not to count/Pilotage | 00:00 | 2  13:20 |
| | 18:40 | 24:00 | 100,00 | | 05:20 | 2  18:40 |
| Thu 07.05.2009 | 00:00 | 12:43 | 100,00 | | 12:43 | 3  07:23 |
| | 12:43 | 19:30 | 0,00 | Holds closed due to rain | 00:00 | 3  07:23 |
| | 19:30 | 23:30 | 100,00 | | 04:00 | 3  11:23 |
| | 23:30 | 24:00 | 0,00 | Holds closed due to rain | 00:00 | 3  11:23 |
| Fri  08.05.2009 | 00:00 | 07:30 | 0,00 | Holds closed due to rain | 00:00 | 3  11:23 |
| | 07:30 | 23:30 | 100,00 | | 16:00 | 4  03:23 |
| | 23:30 | 24:00 | 0,00 | Holds closed due to rain | 00:00 | 4  03:23 |
| Sat 09.05.2009 | 00:00 | 02:15 | 0,00 | Holds closed due to rain | 00:00 | 4  03:23 |
| | 02:15 | 04:15 | 100,00 | | 02:00 | 4  05:23 |
| | 04:15 | 07:30 | 0,00 | Holds closed due to rain | 00:00 | 4  05:23 |
| | 07:30 | 08:50 | 100,00 | | 01:20 | 4  06:43 |
| | 08:50 | 09:45 | 0,00 | Holds closed due to rain | 00:00 | 4  06:43 |
| | 09:45 | 24:00 | 100,00 | | 14:15 | 4  20:58 |
| Sun 10.05.2009 | 00:00 | 09:30 | 100,00 | | 09:30 | 5  06:28 |
| | 09:30 | 12:15 | 0,00 | Holds closed due to rain | 00:00 | 5  06:28 |
| | 12:15 | 24:00 | 100,00 | | 11:45 | 5  18:13 |
| Mon 11.05.2009 | 00:00 | 04:00 | 100,00 | | 04:00 | 5  22:13 |
| | 04:00 | 15:00 | 0,00 | Holds closed due to rain | 00:00 | 5  22:13 |
| | 15:00 | 24:00 | 100,00 | | 09:00 | 6  07:13 |
| Tue 12.05.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 7  07:13 |
| We 13.05.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 8  07:13 |
| Thu 14.05.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 9  07:13 |
| Fri  15.05.2009 | 00:00 | 02:15 | 100,00 | | 02:15 | 9  09:28 |
| | 02:15 | 07:30 | 0,00 | Holds closed due to rain | 00:00 | 9  09:28 |

*Mekatrade: Laytime Calculation*                16/07/2009        Page: 2

M/V     **GALINA III**

| | | | | | | |
|---|---|---|---|---|---|---|
| | 07:30 | 23:30 | 100,00 | | 16:00 | 10 01:28 |
| | 23:30 | 24:00 | 0,00 Holds closed due to rain | | 00:00 | 10 01:28 |
| Sat 16.05.2009 | 00:00 | 01:30 | 0,00 Holds closed due to rain | | 00:00 | 10 01:28 |
| | 01:30 | 24:00 | 100,00 | | 22:30 | 10 23:58 |
| Sun 17.05.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 11 23:58 |
| Mon 18.05.2009 | 00:00 | 04:45 | 100,00 | | 04:45 | 12 04:43 |
| | 04:45 | 07:30 | 0,00 Holds closed due to rain | | 00:00 | 12 04:43 |
| | 07:30 | 24:00 | 100,00 | | 16:30 | 12 21:13 |
| Tue 19.05.2009 | 00:00 | 21:57 | 100,00 | | 21:57 | 13 19:10 |
| | 21:57 | | | Vessel on demurrage | | |
| | 21:57 | 24:00 | 100,00 | | 02:03 | 13 21:13 |
| We 20.05.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 14 21:13 |
| Thu 21.05.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 15 21:13 |
| Fri 22.05.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 16 21:13 |
| Sat 23.05.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 17 21:13 |
| Sun 24.05.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 18 21:13 |
| Mon 25.05.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 19 21:13 |
| Tue 26.05.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 20 21:13 |
| We 27.05.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 21 21:13 |
| Thu 28.05.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 22 21:13 |
| Fri 29.05.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 23 21:13 |
| Sat 30.05.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 24 21:13 |
| Sun 31.05.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 25 21:13 |
| Mon 01.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 26 21:13 |
| Tue 02.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 27 21:13 |
| We 03.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 28 21:13 |
| Thu 04.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 29 21:13 |
| Fri 05.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 30 21:13 |
| Sat 06.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 31 21:13 |
| Sun 07.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 32 21:13 |
| Mon 08.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 33 21:13 |
| Tue 09.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 34 21:13 |
| We 10.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 35 21:13 |
| Thu 11.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 36 21:13 |
| Fri 12.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 37 21:13 |
| Sat 13.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 38 21:13 |
| Sun 14.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 39 21:13 |
| Mon 15.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 40 21:13 |
| Tue 16.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 41 21:13 |
| We 17.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 42 21:13 |
| Thu 18.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 43 21:13 |
| Fri 19.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 44 21:13 |
| Sat 20.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 45 21:13 |
| Sun 21.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 46 21:13 |
| Mon 22.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 47 21:13 |
| Tue 23.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 48 21:13 |
| We 24.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 49 21:13 |
| Thu 25.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 50 21:13 |
| Fri 26.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 51 21:13 |
| Sat 27.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 52 21:13 |
| Sun 28.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 53 21:13 |

*Mekatrade: Laytime Calculation*     16/07/2009       Page: 3

M/V     **GALINA III**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Mon 29.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 54 | 21:13 |
| Tue 30.06.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 55 | 21:13 |
| We 01.07.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 56 | 21:13 |
| Thu 02.07.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 57 | 21:13 |
| Fri 03.07.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 58 | 21:13 |
| Sat 04.07.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 59 | 21:13 |
| Sun 05.07.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 60 | 21:13 |
| Mon 06.07.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 61 | 21:13 |
| Tue 07.07.2009 | 00:00 | 11:30 | 100,00 | Discharging completed | 11:30 | 62 | 08:43 |

| | | |
|---|---|---|
| Time allowed: | 13 d | 19:10 |
| Time used: | 62 d | 08:43 |
| **Time lost** | **48 d** | **13:33** |

**Demurrage due:     48 d 13:33 hrs at     USD     8 900,00 /day =  USD     432 224,79**

(c) Burmester & Vogel, Hamburg

07/07/2009  18:03    225-21-75-41-25    SIMAT SHIPPING DEPT    PAGE  12/16

## NOTICE OF READINESS

| | |
|---|---|
| Port **ABIDJAN, IVORY COAST** | Date **04th May, 2009** |

To Messrs **SIMAT SHIPPING**

**MEKATRADE BV DELFT - GENEVA BRANCH**

**BRISA LINES S.A,**

Please be hereby officially notified that the vessel **"GALINA II"** of which I am the Master

has arrived at **ABIDJAN P/S** at 3:00 on **04th May, 2009**

anchored at _____ at _____ on _____

duly entered this port and berthed at 18:00 on **06th May, 2009**

with "Free Pratique" granted and other formalities completed at 19:15 on **06th May, 2009**

is in all respects ready to commence discharging   20,698,200 mt   cargo of   **urea in bulk**

as per Charter Party

The time allowed commences and expires in accordance with Terms, Conditions, Exceptions and any addenda thereto ruling the relative Charter Party in force for this carriage on which Shippers/Receivers declare to agree with their acknowledgement on attached duplicates.

The vessel is, therefore, being formally tendered at   **03:00 (LT=GMT)**   on   **04th May, 2009**

Very truly yours,

The Master of the m/v   **"GALINA III**   O.Ulyanchenko

NOTICE OF READINESS ACCEPTED   at _____

*TIME TO COUNT AS PER c/P*
*TERMS AND CONDITIONS.*

by _____

In accordance with all Terms and Conditions of

the above Freighting Agreement _____

Form:91



*Exhibit F*



MEKATRADE Asia Pte Ltd, Singapore
Geneva Branch

BAUCHE S.A.
4, Rue Jean Nicot
75007 PARIS

Ref.CG/                                          Geneva, 16/07/09

### D E B I T   N O T E   N R   0 7 . 3 4 4   / 1 6 . 0 7 . 0 9

---

**M/V  OCEAN LIGHT - B/L 28/04/09**
Discharging Abidjan - Urea 21.104,032mts
16/05/09 – 10/07/09

DEMURRAGE for your account
Final calculation as per attached time sheet.

                                    TO YOUR DEBIT   .........   **USD 455.751,39**

OUR VAT NUMBER : 602638   EXPORT VAT 0%

Payment terms : upon receipt of invoice
Through :
Banque Cantonale de Genève
Quai de l'Île 17
CH – 1211 GENEVE 2

Swift : BCGECHGG
USD account : 5011.84.64
IBAN : CH07 0078 8000 0501 1846 4
Correspondent bank : CITIBANK / NY

---

MEKATRADE Asia – 360 Orchard Road #12-04A International Building – 238869 Singapore – Singapore

Place du Molard, 7                    Tel : +41 22 592 05 00
1204 Geneva                          Fax : +41 22 310 93 30
Switzerland                          Email : mekatrade.geneva@mekatrade.com



***Mekatrade: Laytime Calculation***        16/07/2009        Page: 1

**M/V     OCEAN LIGHT**

Partner     BAUCHE
From/To
Details
C/P
Calculating  Non reversible; Once on demurrage, always on demurrage

| Discharging at | **ABIDJAN** |
|---|---|
| Calculating | Non reversible; Counting working time saved |
| Cargo | mts | 21 104,032 UREA |
| Allowance | mts/day | 1 500,000 |
| Demurrage rate | USD/day | 11 000,00 |
| Despatch rate | USD/day | 5 500,00 |

| Sat | 16.05.2009 | 03:30 | Vessel arrived |
|---|---|---|---|
| Sat | 16.05.2009 | 03:30 | Notice tendered |
| Fri | 22.05.2009 | 13:48 | Vessel berthed |
| Fri | 22.05.2009 | 15:00 | Discharging commenced |
| **Sat** | **16.05.2009** | **03:30** | **Laytime commenced** |
| Sun | 12.07.2009 | 09:30 | Operations completed |

| Date | From | Until | % to count | Remarks/Description | Time used | Total time days hh:mm |
|---|---|---|---|---|---|---|
| Sat 16.05.2009 | 03:30 | 24:00 | 100,00 | | **20:30** | 0 20:30 |
| Sun 17.05.2009 | 00:00 | 24:00 | 100,00 | | **24:00** | 1 20:30 |
| Mon 18.05.2009 | 00:00 | 24:00 | 100,00 | | **24:00** | 2 20:30 |
| Tue 19.05.2009 | 00:00 | 24:00 | 100,00 | | **24:00** | 3 20:30 |
| We 20.05.2009 | 00:00 | 24:00 | 100,00 | | **24:00** | 4 20:30 |
| Thu 21.05.2009 | 00:00 | 24:00 | 100,00 | | **24:00** | 5 20:30 |
| Fri 22.05.2009 | 00:00 | 12:30 | 100,00 | | **12:30** | 6 09:00 |
| | 12:30 | 13:48 | 0,00 | Time not to count/pilotage time | **00:00** | 6 09:00 |
| | 13:48 | 24:00 | 100,00 | | **10:12** | 6 19:12 |
| Sat 23.05.2009 | 00:00 | 24:00 | 100,00 | | **24:00** | 7 19:12 |
| Sun 24.05.2009 | 00:00 | 24:00 | 100,00 | | **24:00** | 8 19:12 |
| Mon 25.05.2009 | 00:00 | 02:20 | 100,00 | | **02:20** | 8 21:32 |
| | 02:20 | 03:35 | 0,00 | Holds closed due to rain | **00:00** | 8 21:32 |
| | 03:35 | 07:30 | 100,00 | | **03:55** | 9 01:27 |
| | 07:30 | 11:50 | 0,00 | Holds closed due to rain | **00:00** | 9 01:27 |
| | 11:50 | 19:30 | 100,00 | | **07:40** | 9 09:07 |
| | 19:30 | 24:00 | 0,00 | Holds closed due to rain | **00:00** | 9 09:07 |
| Tue 26.05.2009 | 00:00 | 07:30 | 0,00 | Holds closed due to rain | **00:00** | 9 09:07 |
| | 07:30 | 24:00 | 100,00 | | **16:30** | 10 01:37 |
| We 27.05.2009 | 00:00 | 24:00 | 100,00 | | **24:00** | 11 01:37 |
| Thu 28.05.2009 | 00:00 | 13:30 | 100,00 | | **13:30** | 11 15:07 |
| | 13:30 | 21:30 | 0,00 | Holds closed due to rain | **00:00** | 11 15:07 |
| | 21:30 | 24:00 | 100,00 | | **02:30** | 11 17:37 |
| Fri 29.05.2009 | 00:00 | 01:45 | 100,00 | | **01:45** | 11 19:22 |
| | 01:45 | 04:00 | 0,00 | Holds closed due to rain | **00:00** | 11 19:22 |
| | 04:00 | 13:15 | 100,00 | | **09:15** | 12 04:37 |
| | 13:15 | 15:55 | 0,00 | Holds closed due to rain | **00:00** | 12 04:37 |
| | 15:55 | 16:30 | 100,00 | | **00:35** | 12 05:12 |
| | 16:30 | 19:30 | 0,00 | Holds closed due to rain | **00:00** | 12 05:12 |

*Mekatrade: Laytime Calculation*                    16/07/2009          Page: 2

MN      **OCEAN LIGHT**

| Date | Start | End | % | Remarks | | Time | Cum |
|---|---|---|---|---|---|---|---|
| | 19:30 | 24:00 | 100,00 | | | 04:30 | 12 09:42 |
| Sat 30.05.2009 | 00:00 | 04:15 | 100,00 | | | 04:15 | 12 13:57 |
| | 04:15 | 07:30 | 0,00 | Holds closed due to rain | | 00:00 | 12 13:57 |
| | 07:30 | 12:40 | 100,00 | | | 05:10 | 12 19:07 |
| | 12:40 | 14:20 | 0,00 | Holds closed due to rain | | 00:00 | 12 19:07 |
| | 14:20 | 19:30 | 100,00 | | | 05:10 | 13 00:17 |
| | 19:30 | 21:45 | 0,00 | Holds closed due to rain | | 00:00 | 13 00:17 |
| | 21:45 | 24:00 | 100,00 | | | 02:15 | 13 02:32 |
| Sun 31.05.2009 | 00:00 | 23:08 | 100,00 | | | 23:08 | 14 01:40 |
| | 23:08 | | | Vessel on demurrage | | | |
| | 23:08 | 24:00 | 100,00 | | | 00:52 | 14 02:32 |
| Mon 01.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 15 02:32 |
| Tue 02.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 16 02:32 |
| We 03.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 17 02:32 |
| Thu 04.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 18 02:32 |
| Fri 05.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 19 02:32 |
| Sat 06.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 20 02:32 |
| Sun 07.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 21 02:32 |
| Mon 08.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 22 02:32 |
| Tue 09.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 23 02:32 |
| We 10.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 24 02:32 |
| Thu 11.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 25 02:32 |
| Fri 12.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 26 02:32 |
| Sat 13.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 27 02:32 |
| Sun 14.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 28 02:32 |
| Mon 15.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 29 02:32 |
| Tue 16.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 30 02:32 |
| We 17.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 31 02:32 |
| Thu 18.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 32 02:32 |
| Fri 19.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 33 02:32 |
| Sat 20.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 34 02:32 |
| Sun 21.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 35 02:32 |
| Mon 22.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 36 02:32 |
| Tue 23.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 37 02:32 |
| We 24.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 38 02:32 |
| Thu 25.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 39 02:32 |
| Fri 26.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 40 02:32 |
| Sat 27.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 41 02:32 |
| Sun 28.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 42 02:32 |
| Mon 29.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 43 02:32 |
| Tue 30.06.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 44 02:32 |
| We 01.07.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 45 02:32 |
| Thu 02.07.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 46 02:32 |
| Fri 03.07.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 47 02:32 |
| Sat 04.07.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 48 02:32 |
| Sun 05.07.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 49 02:32 |
| Mon 06.07.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 50 02:32 |
| Tue 07.07.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 51 02:32 |
| We 08.07.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 52 02:32 |
| Thu 09.07.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 53 02:32 |
| Fri 10.07.2009 | 00:00 | 24:00 | 100,00 | | | 24:00 | 54 02:32 |

*Mekatrade: Laytime Calculation*                      18/07/2009        Page: 3

M/V    **OCEAN LIGHT**

| Sat 11.07.2009 | 00:00 | 24:00 | 100,00 | | 24:00 | 55 02:32 |
| Sun 12.07.2009 | 00:00 | 09:30 | 100,00 | Discharging completed | 09:30 | 55 12:02 |

| | | | | |
|---|---|---|---|---|
| Time allowed: | | | 14 d 01:40 | |
| Time used: | | | 55 d 12:02 | |
| **Time lost** | | | **41 d 10:22** | |

| Demurrage due: | 41 d 10:22 hrs at | USD | 11 000,00 /day = | USD | 455 751,39 |

ocean light D

(c) Burmester & Vogel, Hamburg

**xe** The World's Favorite Currency Site

English
Search

| Home | Tools ▾ | Trading ▾ | Licensing ▾ | Travel ▾ | Like Our Site? ▾ | Help ▾ |

Save money on your international payments guaranteed!
No cost  –  No obligation – Supports 15 major world currencies

**XE** trade by XE.com

Find out more today at www.xe.com/fx

*Universal Currency Converter™ Results*                                        Using

# Printed from the XE Universal Currency Converter at: www.xe.com/

Memo: ...................................................................................................

...........................................................................................................

Live rates at 2009.08.25 18:03:54 UTC

**25,000.00 EUR**      **=**      **35,764.03 USD**

Euro                                 United States Dollars
1 EUR = 1.43056 USD                  1 USD = 0.699026 EUR

## XE Tools & Services

**Trading**                    **Travel**                      **Data & Tools**

**Transfer Money** ›           **Book Your Trip** ›            **Use our Currency Data** ›

Get the best currency rates     Find amazing flight, hotel, & package   Use the industry's most acc
guaranteed with XE Trade. You'll deals for your vacation or business   rates to power your website
save time and money on your     travel. With the XE Travel rate   accounting package or exp
currency transfers and foreign  guarantee, you'll save more when   management software. Use
payments.                       you book hotel + air.           Datafeed.

**Trade Currency** ›           **Read Travel Reviews** ›       **Get Currency News** ›

Intro to Currency Trading with  Our Destination Guide offers honest   Use our FREE Currency Cl
various tips like choosing a broker.   reviews & opinions from real   read breaking economic ne
Find a glossary of forex terms,  travelers for cities, hotels, attractions,   commentary about currenci
breaking news, live forex and interest  & restaurants. Before you book a   the foreign exchange marke
rates. Read our Currency Trading  trip, do your travel research.   XE Forex News.
articles.

More Tools &